DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Michael Sullivan, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On August 15, 2006, Appellant, Michael Sullivan, was indicted on one count of attempted tampering with evidence, in violation of R.C.2923.02 and R.C. 2921.12(A)(1), a felony of the fourth degree. He waived his right to a jury trial and his case proceeded to a bench trial on February 12 and 13, 2007. On February 28, 2007, the trial court entered its order finding him guilty of attempted tampering with evidence. Mr. Sullivan was sentenced to three years of probation *Page 2 
and community control sanctions. He timely appealed his conviction, raising two assignments of error for our review. We have combined his assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR I "APPELLANT'S CONVICTION IN THIS CASE WAS BASED ON INSUFFICIENT EVIDENCE AND, THEREFORE, SHOULD BE REVERSED."
 ASSIGNMENT OF ERROR II "THE GUILTY VERDICT IN THIS CASE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND, THEREFORE, MUST BE REVERSED."
 {¶ 3} In Appellant's assignments of error, he contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 4} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. *Page 3 
Therefore, we will address his claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 5} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 6} Mr. Sullivan was convicted of attempted tampering with evidence, in violation of R.C. 2923.02 and R.C. 2921.12. R.C. 2923.02(A) defines attempt and states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 7} Under R.C. 2921.12(A)(1), which proscribes tampering with evidence,
 "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" *Page 4 
 {¶ 8} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. State v. Woods (1976), 48 Ohio St.2d 127, paragraph one of the syllabus, overruled in part by State v. Downs
(1977), 51 Ohio St.2d 47, 364. In defining substantial step, theWoods Court indicated that the act need not be the last proximate act prior to the commission of the offense. Id. at 131-32. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus.
 {¶ 9} R.C. 2901.22(A) states that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 10} To determine if the purposeful elements exist, "[a] defendant's state of mind may be inferred from the totality of the surrounding circumstances" State v. Harper (Mar. 29, 2000), 9th Dist. No. 19632, at *2. The surrounding facts and circumstances were presented by the State through the testimony of Medina Sheriff Deputies Dan Kohler and Robert Locher.
 {¶ 11} Dep. Kohler testified that on August 4, 2006, he and Dep. Locher drove to Donald Sullivan's ("Donald") house in Westfield Township to serve an arrest warrant on Donald arising from a domestic violence complaint. The house *Page 5 
was dark when the officers arrived. The officers heard two people on the porch whispering. They listened for about two minutes. The officers observed two men standing near a table on the porch talking and drinking beer. One of the men was later identified as Donald's brother, Michael Sullivan. The officers observed Michael walk off the porch to urinate.
 {¶ 12} Dep. Kohler approached Michael and asked him where Donald was. Michael nodded towards the porch and indicated that Donald was on the porch. Dep. Kohler approached Donald to confirm his identity. He pointed his flashlight at Donald. At that point, Donald backed up towards the open door and removed his shirt. Dep. Kohler drew his Taser from his holster and instructed Donald to stop. Dep. Locher moved behind Donald to prevent him from retreating into the house. The officers then handcuffed Donald and informed him that he had an arrest warrant arising out of a domestic violence complaint. Dep. Kohler noticed that Donald was intoxicated.
 {¶ 13} Dep. Kohler observed Donald twist his body in an apparent attempt to reach his right, front pocket. At that point, Michael offered to take Donald's cell phone. Dep. Kohler instructed Michael at least twice not to worry about the phone and that he would retrieve the phone from Donald. Dep. Kohler testified that he had no doubt that he had given this instruction loudly enough for Michael to hear it. Despite Dep. Kohler's instruction, Michael repeatedly stated that he wanted to obtain Donald's cell phone. Michael then placed one hand into *Page 6 
Donald's right front pant pocket. He did not reach for Donald's cell phone which was clipped to the back of his pants. Dep. Kohler believed that Michael was reaching for something in the pocket. Dep. Kohler pushed Michael away. Dep. Locher, who was holding his Taser gun, ordered Michael to his knees. Dep. Locher then handcuffed Michael.
 {¶ 14} Dep. Kohler opened Donald's right, front pocket and found a small, clear plastic bag containing a white powder. Tests later revealed that the substance was cocaine. Dep. Kohler also testified that there was a piece of black glass with a white powder substance on it on a table on the porch. The officers arrested the brothers.
 {¶ 15} On re-cross examination, Dep. Kohler stated that neither he nor Dep. Locher ever gave Michael permission to approach Donald to retrieve his cell phone.
 {¶ 16} Dep. Locher largely corroborated Dep. Kohler's testimony. Dep. Locher testified that there was either a rifle or a shotgun leaning against the wall of the door to the house. Dep. Locher testified that he was certain that Michael was not reaching for Donald's cell phone when Michael pulled on one of Donald's pant pockets to look inside. Dep. Locher stated that it appeared that Michael was trying to get something from inside Donald's pocket. He further testified that as Michael started to reach into the pocket, Dep. Kohler shoved Michael with a forearm. He said that if Michael's hand had entered Donald's pocket, he would *Page 7 
have stunned him with a Taser. He explained that at the time Michael reached for Donald's pocket, Dep. Locher had no way of knowing whether Michael was reaching for a weapon or something else. Dep. Locher testified that he knew for certain that Michael was not reaching for Donald's cell phone but that he was reaching for something inside the pocket.
 {¶ 17} Donald Sullivan testified for the defense. He denied trying to reach into his pocket after he was handcuffed. He also denied that Michael was trying to reach into his pocket. He stated that Michael did not know anything about the cocaine and more specifically, that Michael did not know anything about the cocaine in his pocket. According to Donald, Michael had arrived at his house a few minutes before the police arrived. He stated that Michael had come to his house to provide moral support for his domestic problems. Further, he testified that when the police arrived, he and Michael were talking about a mechanical project.
 {¶ 18} Donald also testified that he lied to the police when he told them that he did not know how the cocaine got into his pocket. He testified that he actually did know how the cocaine got into his pocket and that he had lied because he was trying to avoid a drug charge. Donald also testified that he always keeps his cell phone in his right front pocket, not clipped to the back of his pants, as Dep. Locher testified. He stated that he told Michael that he wanted him to ask the officers if Michael could have his cell phone because he used it for business calls and, *Page 8 
because he was being arrested and could not take those calls, he wanted Michael to take the calls for him. Donald denied that Michael approached him after he was handcuffed and placed under arrest. On re-direct, Donald testified that the police gave Michael permission to take the telephone from him.
 {¶ 19} Michael Sullivan also testified. According to Michael, Donald was inside the house, not on the porch, when police arrived. He testified that he asked permission to retrieve the cell phone from Donald and that Dep. Kohler told him that he could do so. According to Michael, when he reached for the phone, Dep. Locher pushed him away and arrested him. He also testified that Dep. Kohler "fished around" in Donald's pocket and pulled out the bag of cocaine. Michael testified that he did not at any time reach inside Donald's pocket to obtain something.
 {¶ 20} On cross-examination, Michael admitted that he was convicted of a drug offense in 1997. He stated that during the incident involving his brother, he did not touch his brother at any time, but that he only made a motion towards his brother.
 {¶ 21} On appeal, Michael contends that the State introduced no credible evidence that he specifically intended to commit the underlying offense of tampering with evidence and further, that the State introduced no credible evidence that Michael took a substantial step toward completing the offense that was strongly corroborative of his criminal purpose. Michael points out that the *Page 9 
officers' trial testimony that Donald's cell phone was clipped to the back of his pants contradicts their statements in their supplemental reports on the incident that the cell phone was clipped to the right front pocket of Donald's pants.
 {¶ 22} The supplemental report is largely consistent with the officers' testimony at trial that (1) while handcuffed, Donald repeatedly tried to reach into the right front area of his pants, (2) despite Dep. Kohler's repeated warnings to Michael not to approach Donald, Michael continued to approach his brother, (3) Michael pulled out Donald's right front pocket with one hand and attempted to reach inside with the other hand, (4) Michael did not touch the cell phone and (5) Dep. Kohler found a plastic bag in Donald's right front pocket which contained cocaine. The supplemental report also reflects that Dep. Locher stated that Donald's cell phone was attached to his right front pocket, not to the back of his pants as he testified at trial.
 {¶ 23} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the judge clearly lost his way when he found Michael guilty of attempted tampering with evidence. The record contained evidence from which the judge could have found that Michael was trying to remove incriminating evidence from his brother's pocket despite Dep. Kohler's instruction that he refrain from approaching his brother. The record reflects that the officers had to use force to move Michael away from his brother as Michael reached for his *Page 10 
brother's right front pant pocket. Contrary to Michael's assertions on appeal, the officers consistently stated that Michael was not reaching for Donald's cell phone but was instead, reaching for Donald's right front pocket — the same pocket in which the officers discovered the bag of cocaine. We agree with the judge's decision to disbelieve Michael and Donald's testimony.
 {¶ 24} The record reflects that the officers' testimony was consistent. Upon review of the record, we cannot conclude that the judge created a manifest miscarriage of justice in finding that Michael acted purposefully or knowingly in trying to conceal evidence from the police. Michael's act of pulling out Donald's right front pocket with one hand and attempting to reach inside with the other hand constituted a substantial step in the course of his plan to conceal the cocaine from the police.
 {¶ 25} We find that the judge's verdict convicting Michael of attempted tampering with evidence was not against the manifest weight of the evidence. As this Court has disposed of Michael's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Necessarily included in this court's determination that the judge's verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, Michael's assignments of error are overruled. *Page 11 
 III. {¶ 26} Michael's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 12 
 SLABY, J. WHITMORE, J. CONCUR *Page 1