The STATE of Ohio, Appellee,

v.

SKORVANEK, Appellant.

[Cite as *State v. Skorvanek,* 182 Ohio App.3d 615, 2009-Ohio-1709.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 08CA009380.

Decided April 13, 2009.

616

Dennis P. Will, Lorain County Prosecuting Attorney, and Brendan J. Mackin, Assistant Prosecuting Attorney, for appellee.

Paul Griffin, for appellant.

Per Curiam.

## INTRODUCTION

{¶ 1} As police officers stopped John Skorvanek's vehicle for a traffic violation, they saw him throw a prescription pill bottle out the window. When one of the officers retrieved the bottle, he found that it contained heroin and four different

types of oxycodone pills. Skorvanek was convicted of possession of heroin, oxycodone, Percocet, Vicodin, drug paraphernalia, and criminal tools. He was also convicted of tampering with evidence. He has appealed, arguing that his convictions for possession of oxycodone, possession of Percocet, and tampering with evidence are not supported by sufficient evidence and are against the manifest weight of the evidence. This court reverses his second-degree-felony conviction for possession of oxycodone because it was not based on sufficient evidence of the bulk amount of the drug. This case is remanded so that the trial court can enter a conviction and resentence Skorvanek on the lesser included offense of fifth-degree-felony possession of oxycodone. Skorvanek's convictions for possession of Percocet and tampering with evidence are affirmed because they are supported by sufficient evidence and are not against the manifest weight of the evidence.

## BACKGROUND

{¶ 2} At approximately 9:30 p.m. on September 27, 2005, Officers James Widmer and John Davidson responded to a request to stop a vehicle due to an improper left-hand turn. When the vehicle passed the officers, who were in a parking lot, they began to follow it north on Broadway. As the vehicle made a left turn onto 37th Street, both officers saw the driver "throw something with his left hand over the top of his car onto the corner of 37th Street." The officers finished making the stop, and Officer Davidson waited while Officer Widmer returned on foot to the corner of 37th Street. Officer Widmer found a pill bottle lying on the grass at the location where he believed the item had been thrown. The pill bottle contained heroin and various types of pills.

{¶ 3} Officer Widmer and Officer Davidson identified Skorvanek as the driver of the vehicle and owner of the pill bottle. The officers arrested Skorvanek and searched him. They discovered $954 on him and a tally sheet in his wallet. According to Officer Davidson, a tally sheet is a list of names, telephone numbers, and the amount of money that those listed on the sheet owe the holder of the tally sheet.

{¶ 4} On November 10, 2005, the grand jury indicted Skorvanek for possession of heroin, possession of oxycodone, possession of drug paraphernalia, possession of Percocet, possession of Vicodin, tampering with evidence, and possession of criminal tools. A jury found him guilty on all counts, and the trial court sentenced him to a total of two years in prison.

## POSSESSION OF OXYCODONE

{¶ 5} Skorvanek's first assignment of error is that his conviction for possession of oxycodone is based on insufficient evidence and is against the

manifest weight of the evidence. "Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh," this court will first consider his argument that his conviction is not supported by sufficient evidence. *Whitaker v. M.T. Automotive Inc.*, 9th Dist. No. 21836, 2007-Ohio-7057, 2007 WL 4554457, at ¶ 13. Whether a conviction is supported by sufficient evidence is a question of law that this court reviews de novo. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541; *State v. West,* 9th Dist. No. 04CA008554, 2005-Ohio-990, 2005 WL 544820, at ¶ 33. This court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Skorvanek's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 6} It is a violation of R.C. 2925.11(A) for a person to knowingly obtain, possess, or use a controlled substance. Oxycodone is a Schedule II controlled substance. R.C. 3719.01(C) (defining "controlled substance" as including any Schedule II substance); R.C. 3719.41(A)(1)(n) (listing oxycodone as a Schedule II substance). Possession of oxycodone is a second-degree felony if "the amount of [oxycodone] involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount." R.C. 2925.11(C)(1)(c). The "bulk amount" of oxycodone is "[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual." R.C. 2925.01(D)(1)(d). The phrase "standard pharmaceutical reference manual" means the current edition of "(1) 'The National Formulary'; (2) 'The United States Pharmacopeia,' prepared by authority of the United States Pharmacopeial Convention, Inc.; [or] (3) Other standard references that are approved by the state board of pharmacy." R.C. 2925.01(M)(1) through (3).

{¶ 7} Skorvanek has argued that the state failed to prove that he possessed the bulk amount of oxycodone. Specifically, he has argued that the state did not introduce evidence of what constitutes the "maximum daily dose" of oxycodone because Barbara DiPietro, an employee of Ohio's Bureau of Criminal Identification and Investigation, was not qualified to render an expert opinion as to what constitutes the maximum daily dose of oxycodone and did not rely upon a "standard pharmaceutical reference manual" in reaching her dose determination. Skorvanek has argued that DiPietro only arrived at a dose determination by consulting another chemist in her lab and referring to a "booklet type chart" that was not introduced into evidence.

{¶ 8} DiPietro, a forensic chemist, inspected and tested the contents of the pill bottle that Skorvanek threw from his vehicle. She testified that she identified four different types of oxycodone pills in the bottle and that oxycodone is a Schedule II drug for which a valid prescription is required. Her lab report confirmed that she identified four types of oxycodone pills in Skorvanek's pill

bottle: (1) 24 yellow pills marked "ABG 40," (2) 18 green pills marked "OC 80," (3) two white pills marked "4839V," and (4) one white pill marked "WATSON933." The white pills were Percocet, which DiPietro identified as a brand of oxycodone. Because the state separately charged Skorvanek with possession of Percocet, DiPietro did not factor the Percocet into her bulk-amount calculations for the oxycodone. She testified that the yellow pills and the green pills weighed a total of 8.05 grams. She further testified that 12 pills equal the bulk amount of the yellow pills and six pills equal the bulk amount of the green pills.

{¶ 9} DiPietro testified that there are different ways to determine bulk amount and that she and another chemist had recently discussed it:

Bulk amount, there's a couple different ways. It's basically set up by the Board of Pharmacy, the State Board of Pharmacy. And there's a different, like, formulas that determine the bulk amount.

\* \* \*

The reason I happen to know [the bulk amount] for oxycodone is we have recently had reason to investigate it, talk to the Board of Pharmacy, one of the other chemists in my lab, and we have discussed this in the last two weeks.

She further testified that the "bulk amount" of oxycodone "is listed in the Ohio Revised Code," although she was unable to recall where:

Q: \* \* \* In what section of the Ohio Revised Code is [the maximum daily dose] listed?

A: There is a section in the back that lists all of the drugs. It will say its schedule and its bulk amount.

Q: I am not familiar with that. Do you have a Revised Code number?

A: It's in—it's a part that is added in. We get an up—like, I think it's like every six months or somewhere, \* \* \* we get an update from them. I don't know where they come from exactly. I guess the Board of Pharmacy puts it out.

Q: So it's just some chart?

A: It is a chart. It is a—like a booklet type chart, correct.

DiPietro testified that she did not rely upon any standard pharmaceutical reference manuals in determining the daily maximum dose.

{¶ 10} DiPietro was the only witness to testify about the daily maximum doses for the yellow and green pills found in Skorvanek's pill bottle. Based on her testimony, this court cannot conclude that the state proved the two daily maximum doses. DiPietro testified that she was trained as a forensic chemist and that her job is to analyze evidence to determine the presence of controlled or illegal substances. She did not testify that she had any specialized knowledge regarding the daily maximum dose amounts of controlled substances or the

formulas used to calculate those amounts. Accordingly, while DiPietro was qualified to testify about the contents of Skorvanek's pill bottle, she was not qualified to testify about the daily maximum dose amount of those substances. The daily maximum dose must be determined through reference to "the usual dose range specified in a standard pharmaceutical reference manual." R.C. 2925.01(D)(1)(d). DiPietro did not rely on a standard pharmaceutical reference manual in determining daily maximum dose. See R.C. 2925.01(M)(1) through (3) (defining standard pharmaceutical reference manual). She referred only to an unspecified chart, which was not introduced into evidence, and conversations with another chemist in her lab. Neither of these is a standard pharmaceutical reference manual. See id. Consequently, the state failed to prove the daily maximum dose amounts for the yellow and green pills.

{¶ 11} Although the state failed to prove the daily maximum dose amounts, it could have proven "bulk amount" through weight rather than daily maximum dose. R.C. 2925.01(D)(1)(d) ("bulk amount" means either an amount of a specified weight or an amount in excess of a specified daily maximum dose). To prove bulk amount by weight, the state would have had to prove that Skorvanek possessed oxycodone in "[a]n amount equal to or exceeding twenty grams." Id. The state only proved, however, that Skorvanek possessed 8.05 grams of oxycodone. Accordingly, the state also failed to prove that Skorvanek possessed a "bulk amount" of oxycodone by weight. Because second-degree felony possession of oxycodone depends on possession of a bulk amount of oxycodone, the state failed to present sufficient evidence to convict Skorvanek of second-degree felony possession of oxycodone. See R.C. 2925.11(C)(1)(c).

{¶ 12} The state did prove, however, that Skorvanek possessed 8.05 grams of oxycodone. Possession of oxycodone in an amount less than the bulk amount is a felony of the fifth degree. R.C. 2925.11(C)(1)(a). It is also a lesser included offense of second-degree felony possession of oxycodone. See *State v. Pulizzi* (Jan. 15, 1997), 9th Dist. No. 17797, 1997 WL 22596, at *6–7. "When the evidence shows that a defendant was not guilty of the crime for which he was convicted, but was guilty of a lesser degree of that crime or a lesser-included offense of that crime, we can modify the verdict accordingly, and remand the case for resentencing." *State v. McCoy,* 10th Dist. No. 07AP–769, 2008-Ohio-3293, 2008 WL 2588568, at ¶ 28. Accord *State v. Davis,* 1st Dist. No. C–040411, 2006-Ohio-4599, 2006 WL 2572089, at ¶ 13. Because the state proved that Skorvanek possessed less than the bulk amount of oxycodone, he was guilty of fifth-degree felony possession. Thus, while Skorvanek's first assignment of error is sustained and the judgment of the trial court is reversed on that basis, this case is remanded for the trial court to enter a conviction on the lesser included offense of

fifth-degree felony possession of oxycodone and to resentence Skorvanek accordingly.

## POSSESSION OF PERCOCET

{¶ 13} Skorvanek's second assignment of error is that his conviction for possession of Percocet is based on insufficient evidence and is against the manifest weight of the evidence because he established an affirmative defense. Specifically, he has argued that his conviction should be overturned because he proved that he legally obtained the Percocet through a valid prescription.

██ {¶ 14} Whether a conviction is supported by sufficient evidence is a question of law that this court reviews de novo. *State v. Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541; *State v. West,* 9th Dist. No. 04CA008554, 2005-Ohio-990, 2005 WL 544820, at ¶ 33. This court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Skorvanek's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. When a defendant argues that his convictions are against the manifest weight of the evidence, this court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 15} Percocet, which contains oxycodone, is a Schedule II controlled substance. R.C. 3719.01(C) (defining "controlled substance" as including any Schedule II substance); R.C. 3719.41(A)(1)(n) (listing oxycodone as a Schedule II substance). Skorvanek does not deny that he possessed Percocet. To the extent that his second assignment of error is a challenge to the sufficiency of the evidence supporting his conviction for possession of Percocet, therefore, it is overruled.

██ {¶ 16} Skorvanek has argued, however, that his possession of the Percocet was legal because he had a valid prescription for it. R.C. 2925.11(B)(4) provides that a person will not be criminally liable for possession of a controlled substance if the person "obtained the controlled substance pursuant to a lawful prescription issued by a licensed health professional authorized to prescribe drugs." Such an argument constitutes an affirmative defense. *State v. Dunham,* 3d Dist. No. 04CA2931, 2005-Ohio-3642, at ¶ 45. Thus, Skorvanek bore the burden of proving at trial, by a preponderance of the evidence, that he had a valid prescription for the Percocet he possessed. Id.

{¶ 17} DiPietro testified that she identified two different types of Percocet pills in Skorvanek's pill bottle: two white pills marked "4839V" and one white pill marked "WATSON933." DiPietro testified that the Percocet pills were kept in Skorvanek's pill bottle alongside heroin and several other types of pills, including hydrocodone, pethidine, alprazolam, and two different types of oxycodone.

{¶ 18} James White, a chief pharmacist for Marc's, testified that pharmacies distribute different medications in different pill bottles such that two different types of Percocet prescriptions would never be distributed in one pill bottle. White confirmed that Skorvanek had filled seven prescriptions for Percocet in 2005 and that, from June to September 2005, he was dispensed two different types of generic Percocet. White did not testify, however, that any of Skorvanek's prescriptions matched either of the types of Percocet in his pill bottle. Indeed, there was no direct evidence before the trial court that the Percocet pills contained in Skorvanek's bottle matched a valid prescription.

{¶ 19} Skorvanek bore the burden of proving that he obtained the Percocet in his possession through a valid prescription. Id. Although the record supports the conclusion that Skorvanek had Percocet prescriptions, the record does not contain any direct evidence that any of these prescriptions were for the three pills found in Skorvanek's pill bottle. Although the jury could have inferred that those pills came from his prescription, it was not required to do so. See *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. Accordingly, this court cannot say that the jury lost its way and created a manifest miscarriage of justice by concluding that Skorvanek failed to prove his affirmative defense by a preponderance of the evidence. Skorvanek's second assignment of error is overruled.

## TAMPERING WITH EVIDENCE

{¶ 20} Skorvanek's third assignment of error is that his conviction for tampering with evidence is based on insufficient evidence and is against the manifest weight of the evidence. Specifically, Skorvanek has argued that he was not tampering with evidence when he threw his pill bottle from his moving vehicle because (1) at that point the police were investigating him for a traffic violation, a crime for which a pill bottle would have no evidentiary value, and (2) police were able to recover the pill bottle intact without its value or availability being impaired.

{¶ 21} Under R.C. 2921.12(A)(1), "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with

purpose to impair its value or availability as evidence in such proceeding or investigation." "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). See also *State v. Jones*, 9th Dist. No. 23234, 2006-Ohio-6963, 2006 WL 3825195, at ¶ 13–15 (applying the mens rea of purposely to the offense of tampering with evidence in considering whether defendant purposely impaired the value or availability of evidence). "In determining whether a defendant acted purposely, '[a] defendant's state of mind may be inferred from the totality of the surrounding circumstances.'" *State v. Patel*, 9th Dist. No. 24030, 2008-Ohio-4693, 2008 WL 4227143, at ¶ 34, quoting *State v. Sullivan*, 9th Dist. No. 07CA0076–M, 2008-Ohio-2390, 2008 WL 2079443, at ¶ 10.

{¶ 22} Officers Widmer and Davidson were following Skorvanek because he had committed a traffic violation. Once they stopped him, Officer Widmer walked back and picked up the pill bottle they had seen him throw from his car. Officer Widmer testified that he found it because it was "on the curb lawn between the curb and the sidewalk laying on top of freshly cut grass."

{¶ 23} Skorvanek has argued that his tampering conviction should be overturned because the pill bottle was unrelated to the traffic violation for which he was under investigation at the time. This court has never held that a defendant commits the offense of tampering with evidence only if he tampers with an item directly related to a police officer's purpose for investigating the defendant. In *State v. Sullivan*, 9th Dist. No. 07CA0076–M, 2008-Ohio-2390, 2008 WL 2079443, at ¶ 11–25, this court sustained a conviction for attempted tampering based on a defendant's attempt to conceal cocaine that he had in his pocket when officers came to his residence for the purpose of serving an arrest warrant for domestic violence. An investigation may quickly proceed beyond its initial purpose. See id. The fact that officers initially were following Skorvanek for a traffic violation does not detract from the evidentiary value of the pill bottle filled with heroin and multiple prescription drugs that he threw from his car.

{¶ 24} Furthermore, the fact that Officer Widmer was able to recover the pill bottle intact does not detract from Skorvanek's efforts at tampering. The pill bottle might well not have landed in the ideal position where Officer Widmer was able to discover it lying in the grass at 9:30 p.m. Skorvanek's conviction for tampering with evidence is supported by sufficient evidence and is not against the manifest weight of the evidence. His third assignment of error is overruled.

## CONCLUSION

{¶ 25} Skorvanek's first assignment of error is sustained, and his remaining assignments of error are overruled. Upon remand, the trial court shall enter a

conviction on the lesser included offense of fifth-degree felony possession of oxycodone and resentence Skorvanek accordingly. The judgment of the Lorain County Common Pleas Court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

DICKINSON, P.J., and BELFANCE, J., concur.

WHITMORE, J., dissents.

WHITMORE, Judge, dissenting.

{¶ 26} I respectfully dissent with regard to the resolution of Skorvanek's first assignment of error. Because the state proved that Skorvanek possessed a "bulk amount" of oxycodone, I would affirm Skorvanek's conviction for second-degree felony possession.

{¶ 27} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600, 2000 WL 277908, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279, 574 N.E.2d 492. Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

Id. at paragraph two of the syllabus; see also *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

"In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶ 28} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> [M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see also *Otten,* 33 Ohio App.3d at 340, 515 N.E.2d 1009.

{¶ 29} Barbara DiPietro testified that 12 pills constitute a bulk amount of the yellow pills that Skorvanek possessed and that six pills constitute a bulk amount of the green pills that he possessed. She further testified that Skorvanek possessed twice the bulk amount of the yellow oxycodone pills and three times the bulk amount of the green oxycodone pills. Accordingly, Skorvanek possessed an amount of oxycodone equal to five times the bulk amount.

{¶ 30} At trial, both attorneys extensively examined DiPietro as to how she arrived at the foregoing bulk amount calculations. DiPietro repeatedly testified that she based her bulk amount calculations on her training, education, and the information provided to her by the State Board of Pharmacy. She testified that to determine bulk amount, the State Board of Pharmacy "take[s] the daily maximum dose, * * * multipl[ies] it times five, and then * * * divide[s] it by how many milligrams are actually in the tablet." She then explained how the State Board of Pharmacy determined that 90 milligrams was the maximum daily dose for oxycodone. She explained that six pills constitute a bulk amount of the 80 milligram green pills because (1) 90 milligrams (the maximum daily dose) times five (the number set by the Ohio Revised Code) yields 450 milligrams, (2) 450 milligrams divided by the 80 milligrams in one pill yields an average of 5.62 pills, and (3) rounding the average number of pills up to a whole number results in the bulk amount of oxycodone for 80 milligram green pills being set at six pills. After applying the same formula to the 40-milligram yellow pills, DiPietro explained that 12 pills constitute a bulk amount of those pills. Accordingly,

DiPietro demonstrated a thorough understanding of the mathematical calculations that factor into a bulk amount determination and specified that she reached that determination based on information from the State Board of Pharmacy.

{¶ 31} The Revised Code permits reliance upon "standard references that are approved by the state board of pharmacy" in determining bulk amount. See R.C. 2925.01(D)(1)(d) (defining "bulk amount" as five times the maximum daily dose specified in a standard pharmaceutical reference manual); 2925.01(M)(3) (defining "standard pharmaceutical reference manual" as including "other standard references" approved by the State Board of Pharmacy). DiPietro specifically testified that she referred to information from the State Board of Pharmacy to determine the bulk amount of oxycodone. Skorvanek objected to DiPietro's testimony at trial on the basis of hearsay because Skorvanek did not give "a frame of reference" to specify exactly what pharmaceutical manual she relied upon. Skorvanek's counsel specified: "What is in the actual pharmaceutical manual as articulated by her is hearsay." Skorvanek's counsel wholly rejected the possibility that DiPietro could testify based on the information she received in her training and her experience. The following exchange took place on the record at sidebar:

[SKORVANEK'S COUNSEL]: * * * I just don't think that [DiPietro] has the qualifications to talk about maximum daily dose.

THE COURT: Are you telling me [the State] has got to bring a pharmacist in to define bulk amount?

[SKORVANEK'S COUNSEL]: Yeah.

According to Skorvanek's argument, a lab technician could testify as to bulk amount based on the technician's training and research only if the state also introduced the approved reference manual upon which the technician relied. I do not believe that the Revised Code requires such a result.

{¶ 32} The state need only prove that its witness based his or her bulk amount determination on materials approved by the State Board of Pharmacy. See *State v. Mitchell*, 7th Dist. No. 08JE5, 2008-Ohio-6920, 2008 WL 5412414, at ¶ 17–19 (concluding that state proved "bulk amount" when forensic scientist testified that the bulk amount of oxycodone for 80 milligram pills is six pills based on the dosage amount set forth by the State Board of Pharmacy); *State v. Bailey*, 2d Dist. No. 21123, 2005-Ohio-6669, 2005 WL 3446276, at ¶ 6 (concluding that state proved "bulk amount" of 80 milligram oxycodone pills partially based on testimony that the Revised Code contains a chart, which sets forth maximum daily dose). Once the state does so, it is for the jury to determine whether the state's witness is a credible one and whether that witness's testimony is reliable.

{¶ 33} Here, DiPietro testified that she reached her bulk amount determinations based on information from the State Board of Pharmacy. She also

thoroughly explained her determinations and the calculations underlying them. Her testimony sufficed as evidence of the bulk amount of oxycodone. Further, the jury obviously concluded that DiPietro was both a credible and reliable witness, as it convicted Skorvanek solely on the basis of her testimony. Accordingly, I would conclude that the state proved that Skorvanek possessed the bulk amount of oxycodone.

{¶ 34} I would further reject Skorvanek's additional argument that, even if the state proved bulk amount, his conviction should be overturned because his indictment only charged him with possessing an amount *exceeding* the bulk amount of oxycodone. Skorvanek's argument does not present a challenge to the sufficiency and weight of his conviction as set forth in his captioned assignment of error. Rather, Skorvanek's argument amounts to a challenge to a defect in his indictment whereby the state failed to set forth the entirety of R.C. 2925.11's applicable provision in charging Skorvanek with second-degree felony possession. See 2925.11(C)(1)(c) (providing that second-degree felony possession occurs when the amount of the drug possessed *equals or exceeds* the bulk amount). Disregarding the fact that Skorvanek erroneously assigned error to his indictment through a sufficiency and manifest-weight challenge on appeal, the record reflects that Skorvanek never objected to his indictment. A defendant must raise an objection based upon an alleged defect in the indictment before trial. Crim.R. 12(C). Because Skorvanek did not do so, I would not reach the merits of his defective-indictment argument. I would overrule Skorvanek's first assignment of error and uphold his second-degree felony conviction for possession of oxycodone. Accordingly, I respectfully dissent.