[Cite as *State v. Busek*, 2019-Ohio-1527.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellant,           :

                                      No. 107356

    v.                             :

HALLE BUSEK,                            :

    Defendant-Appellee.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 25, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-624641-A

---

### *Appearances:*

Michael C. O'Malley, Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, *for appellant.*

Robert Botnick, *for appellee.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Plaintiff-appellant, the state of Ohio ("State"), appeals the trial court's judgment dismissing defendant-appellee, Halle Busek's ("Busek"), case on speedy trial grounds. For the reasons set forth below, we affirm.

{¶ 2} On March 4, 2017, Busek was stopped by an Ohio State Highway Patrolman for a traffic violation. At the time of the traffic stop, the patrolman discovered a "crack pipe" and four white pills, which were in Busek's purse.[1] Busek admitted to the patrolman that the pills were Percocet, which the patrolman identified in his report as schedule II pills. The patrolman advised Busek that she would be charged with possession of schedule II pills.

{¶ 3} On March 13, 2017, Busek was charged with possession of drug paraphernalia in Cleveland Municipal Court. In April 2017, Busek entered into a plea agreement with the city and pled no contest to an amended charge of disorderly conduct. The court ordered Busek to pay a $50 fine and court costs.

{¶ 4} On July 18, 2017, the Ohio Department of Public Safety reported that the pills contained oxycodone. Then six months later, on January 12, 2018, Busek was charged with one count of felony drug possession in Cuyahoga County Common Pleas Court. The indictment lists oxycodone as the controlled substance.

{¶ 5} On April 9, 2018, Busek moved to dismiss the charge against her. She argued that her right to speedy trial was violated when she was not brought to trial within 270 days from her initial encounter with law enforcement on March 4, 2017. She noted that she was not charged with drug possession until January 12, 2018, which was more than nine months after her drug paraphernalia charge was resolved and more than ten months after her initial encounter with the highway patrol. The

---

[1] The pills were sent to the Ohio Department of Public Safety for testing.

State opposed, arguing that the lab report constituted "new additional facts," which

tolled the speedy trial time. The trial court agreed with Busek and dismissed the

case. The trial court found that:

> based on the 8th District case of *State v.* [*Rutkowski*, 8th Dist.
> Cuyahoga No. 86289], 2006-Ohio-1087, the court grants [Busek's]
> motion.
>
> Other appellate districts have reached different conclusions concerning
> the speedy trial issue raised in this case and [*Rutkowski*] — primarily
> because certain key facts were determined to be "new additional facts"
> thereby extending the speedy trial time. However, in the case before
> this court, the facts closely resemble those in [*Rutkowski*].
>
> In [*Rutkowski*], the defendant admitted to possessing ecstasy. The
> delay in obtaining the indictment within 270 days of the speedy trial
> obligation occurred because the prosecutor sent the illegal drugs for
> testing. Thereafter, the prosecutor received the report; however, one
> year elapsed between receipt of the lab report confirming the admission
> by the defendant that the pills were, in fact, [ecstasy] and the date of
> the indictment. Under these circumstances, the Eighth District Court
> of Appeals held that defendant's speedy trial rights were violated.
>
> While the Eighth District Court of Appeals in [*Rutkowski*] considered
> the confirmation that the illegal drugs were ecstasy as "new evidence,"
> that court nevertheless held defendant's admission that the pills were
> ecstasy coupled with the year delay in processing this indictment after
> receipt of the lab report, "did not rise to the level to allow [defendant's]
> speedy trial rights to be ignored." *Id.*
>
> Based on the evidence in the case before this court, the police report
> states "defendant allegedly found to be in possession of oxycodone pills
> during a traffic stop," and the defendant stated to the police, as
> documented in the police report, that "she admits to abusing drugs and
> is requesting treatment." Thereafter, as in [*Rutkowski*], a significant
> delay occurred when the prosecutor had this case for six months after
> the illegal drugs were confirmed by the laboratory before an indictment
> was filed. A total of nine months lapsed from the time of her arrest
> until the indictment. As a result, [Busek's] speedy trial rights were
> violated. Accordingly, [Busek's] motion is granted. The case is
> dismissed.

{¶ 6} It is from this order that the State appeals, raising the following single assignment of error for review:

Assignment of Error

The trial court erred when granting [Busek's] motion to dismiss and dismissing this matter with prejudice.

{¶ 7} The State argues Busek's statutory speedy trial clock for the drug possession charge did not begin to run until Busek was indicted on January 12, 2018 because at the time of the traffic stop, the State had no method to determine the chemical composition of the four pills it seized from Busek. The State needed laboratory analysis to confirm that the pills were in fact oxycodone. It contends that the laboratory testing for unknown drugs at the time of the original indictment constitutes "additional facts" that trigger a new speedy trial clock, which begins to run at the filing of the indictment for the offenses resulting from the test results.

{¶ 8} Appellate review of a motion to dismiss for speedy trial violation involves a mixed question of law and fact. *State v. McCaughey*, 8th Dist. Cuyahoga No. 106311, 2018-Ohio-3167, ¶ 8, citing *State v. Loder*, 8th Dist. Cuyahoga Nos. 93242 and 93865, 2010-Ohio-3085, citing *State v. Easley*, 4th Dist. Scioto No. 03CA2910, 2005-Ohio-767. We accord due deference to a trial court's findings of fact if supported by competent, credible evidence, but determine independently if the trial court correctly applied the law to the facts of the case. *Id.* at ¶ 9, citing *Easley* and *State v. Kuhn*, 4th Dist. Ross No. 97 CA 2307, 1998 Ohio App. LEXIS 2765 (June 10, 1998). In addition, when reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the State.

*Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 1996-Ohio-71, 661 N.E.2d 706 and *State v. Mustard*, 4th Dist. Pike No. 04CA724, 2004-Ohio-4917.

{¶ 9} The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution, guarantee a criminal defendant the right to a speedy trial by the state. *State v. O'Brien*, 34 Ohio St.3d 7, 8, 516 N.E.2d 218 (1987), citing *Klopfer v. North Carolina*, 386 U.S. 213, 214, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court declared that, with regard to fixing a time frame for speedy trials, "the States * * * are free to prescribe a reasonable period consistent with constitutional standards[.]" To that end, the Ohio General Assembly enacted R.C. 2945.71 in order to comply with the *Barker* decision.

{¶ 10} R.C. 2945.71(C)(2) provides that a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. *State v. Howard*, 79 Ohio App.3d 705, 707, 607 N.E.2d 1121 (8th Dist.1992). The burden then shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *McCaughey* at ¶ 10, citing *State v. Geraldo*, 13 Ohio App.3d 27, 468 N.E.2d 328 (6th Dist.1983).

{¶ 11} The Supreme Court of Ohio has noted that "'[w]hen new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is

to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge."' *State v. Baker*, 78 Ohio St.3d 108, 110, 1997-Ohio-229, 676 N.E.2d 883, quoting *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989).  However, "[i]n issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment."  *Id.* at syllabus.

{¶ 12} We recognize that the ""'holding in *Baker* is disjunctive and specifically sets forth two scenarios, either of which will reset the speedy-trial timetable for charges arising from a subsequent indictment.'"" *McCaughey* at ¶ 12, quoting *State v. Mohamed*, 10th Dist. Franklin No. 08AP-960, 2009-Ohio-6658, ¶ 30, quoting *State v. Thomas*, 4th Dist. Adams No. 06CA825, 2007-Ohio-5340, ¶ 17. Therefore, "the key questions that must be considered are whether the additional criminal charges arise from facts different from the original charges, and whether the state knew of these facts at the time of the initial charge."  *State v. Robertson*, 8th Dist. Cuyahoga No. 93396, 2010-Ohio-2892, ¶ 18, citing *Baker*.

{¶ 13} In the instant case, our review of the record is contrary to the state's argument that there were new additional facts found in July 2017 when the state received the laboratory results confirming the substance contained oxycodone. Rather, the record demonstrates that at the time of the traffic stop, the state knew Busek was in possession of oxycodone.  Busek admitted to the patrolman that she had four Percocet pills.  In his report, the patrolman identified the pills as Schedule

II pills. We note that "'Percocet, which contains oxycodone, is a Schedule II controlled substance'" under R.C. 3719.41. *State v. Hill*, 8th Dist. Cuyahoga No. 107058, 2019-Ohio-698, ¶ 20, quoting *State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 15 (9th Dist.); *State v. Keen*, 11th Dist. Ashtabula No. 2004-A-0016, 2005-Ohio-4773, ¶ 10.

{¶ 14} In addition, to the extent that the state argues that the instant case is similar to this court's decision in *State v. Wangul*, 8th Dist. Cuyahoga No. 79393, 2002-Ohio-589 (Feb. 14, 2002), and *State v. Penn*, 8th Dist. Cuyahoga No. 101982, 2015-Ohio-3473, we disagree. In *Wangul*, the defendant was arrested on July 31, 2001, after officers received a complaint from a neighbor that Wangul was growing marijuana plants in his backyard. The officers responded to Wangul's home and observed marijuana plants in his backyard. The officers then seized the marijuana plants and arrested Wangul on an unrelated outstanding felony arrest warrant for grand theft charges. At the time of the arrest, no charges were brought against Wangul regarding the marijuana plants. The officers then sent the marijuana plants to the lab to be weighed in order to determine the level of the offense with which to charge Wangul.

{¶ 15} After receiving the lab results, a subsequent indictment for cultivation of marijuana was filed against Wangul on December 12, 2001. Wangul was arrested on these charges on January 9, 2002. Wangul moved to dismiss the case on speedy trial grounds. The trial court denied Wangul's motion. On appeal, this court affirmed the trial court's denial, noting that "[s]ince the subsequent indictment for

cultivation of marijuana was not filed until after the marijuana was weighed and the charges determined, this indictment was based on new and additional facts which were not known at the time [Wangul] was arrested on the outstanding warrant for grand theft." *Wangul* at *6.

{¶ 16} In *Penn*, the defendant was arrested on August 14, 2012, as a result of an incident occurring at Beachwood Place Mall. The officers found Penn to be in possession of numerous gift cards and a counterfeit Pennsylvania driver's license. Penn was charged with obstruction of official business, a second-degree misdemeanor on August 17, 2012. He pled no contest and entered a first-offender program.

{¶ 17} In April and May 2013, the police received verification letters from the credit card institutions, which verified that the gift cards confiscated from Penn had stolen credit data on them. The police did not arrest Penn until January 27, 2014, and he was not indicted until February 10, 2014. The indictment charged Penn with six fifth-degree felony counts of receiving stolen property, six first-degree misdemeanor counts of petty theft, six first-degree misdemeanor counts of misuse of credit cards, one fifth-degree felony count of possessing criminal tools, and one first-degree misdemeanor count of falsification. Penn's motion to dismiss the case on speedy trial grounds was granted by the trial court.

{¶ 18} On appeal, this court reversed the trial court's decision. We reasoned, "the additional criminal charges that were brought against Penn arose from facts different from the original charge. Simply put, the subsequent charges did not arise

from facts that related to the original charge but, rather, involved different facts relating to the gift cards that were confiscated from Penn, which facts were not known at the time of the initial indictment." *Id.* at ¶ 18

{¶ 19} The instant case is distinguishable from *Wangul* and *Penn*. In Wangul, the weight of the marijuana was unknown when officers discovered the marijuana plants. The weight of the marijuana plants was necessary to determine whether Wangul would be charged with a misdemeanor or felony level offense. In *Penn*, the additional facts, which formed the basis of the subsequent charges, became known upon the ensuing investigation into the gift cards and obtaining the verification letters from the credit card institutions. Thus, the new and additional facts in *Wangul* was the actual weight of the marijuana and in *Penn* was the fraudulent use of the credit cards — facts that were not known at the time the officers seized the plants and when the officers arrested Penn — not the lab results confirming that the suspected pills were indeed oxycodone.

{¶ 20} Here, the highway patrolman suspected oxycodone and Busek admitted that she had Percocet. Thus, there were no new facts when the state received the lab results. We agree with the trial court that the instant case is similar to this court's ruling in *Rutkowski*, 8th Dist. Cuyahoga No. 86289, 2006-Ohio-1087, and more recently in *McCaughey*, 8th Dist. Cuyahoga No. 106311, 2018-Ohio-3167.

{¶ 21} In *Rutkowski*, the defendant's vehicle was searched after a traffic stop and the arresting officers discovered baggies of marijuana and a baggie of suspected ecstasy pills. Initially, Rutkowski was charged with the marijuana, but

was not charged with regards to the suspected ecstasy pills. The pills were sent for testing and tested positive for ecstasy. Nearly one year after being charged in municipal court with the marijuana charges, Rutkowski was indicted for felony possession of drugs for the ecstasy pills. Rutkowski filed a motion to dismiss on speedy trial grounds arguing that the only new or additional facts the state can point to are the laboratory results indicating that the confiscated pills tested positive for ecstasy. The trial court denied the motion to dismiss and Rutkowski entered a plea of no contest to the charges.

{¶ 22} On appeal, we reversed the trial court's judgment and Rutkowski's conviction. We found that:

> [n]o additional pieces of evidence were discovered by the police in regard to this case. The pills that [the lab] confirmed positive for ecstasy were discovered by the police at the same time as the evidence used against [Rutkowski] in his first conviction. Furthermore, [Rutkowski] admitted to having ecstasy prior to his first conviction. For some reason, however, the state did not secure [the lab report] until January 2004. Even then, the state waited almost a year after receiving that information to bring a second indictment against appellant. These facts do not arise to a level to allow appellant's speedy trial rights to be ignored, and any charges to be made pursuant to any suspected drugs confiscated on the day of [Rutkowski's] arrest should have culminated in a speedy trial from the date of that arrest.

{¶ 23} Likewise, in *McCaughey*, the defendant was arrested as a result of a traffic stop for operating a vehicle under the influence of drugs and/or alcohol ("OVI"). During the traffic stop, McCaughey admitted to the arresting officer that she had cocaine on her person, and handed the drugs to the officer. She stated to the arresting officer that the substance was cocaine.

{¶ 24} McCaughey was charged in municipal court with OVI and various minor traffic violations. She entered a no contest plea to the OVI charge, and the state nolled the remaining minor traffic violations. McCaughey was not charged at that time for the cocaine. Four months after the indictment, the state received the results of the laboratory testing on the substance, which tested positive for cocaine. Nearly 13 months after being charged in municipal court, McCaughey was indicted with one count of drug possession. McCaughey filed a motion to dismiss on speedy trial grounds, which the trial court granted.

{¶ 25} On appeal, we affirmed the trial court's judgment. We found that:

> the subsequent drug possession charge arose from facts that related to the original charge and involved the same facts. As in *Rutkowski*, these same facts were known at the time the OVI complaint was brought in municipal court in May 2016. The state argues that [McCaughey's] speedy trial time started to run when the laboratory test results were returned to the state in September 2016. The state further argues that only in September 2016 did the state become aware that the substance in [McCaughey's] possession was in fact cocaine. We find this argument to be unpersuasive.
>
> * * *
>
> In the instant case, [McCaughey] stated to the actual arresting officer that the substance * * * was cocaine. Thus, these circumstances in the instant case are even more incurable than the circumstances we noted in *Rutkowski*.

*Id.* at ¶ 20-21.

{¶ 26} Similarly, in the instant case the subsequent drug possession charge arose from facts that related to the original charge and involved the same facts. As in *Rutkowski* and *McCaughey*, these same facts were known at the time the drug paraphenila complaint was brought in municipal court in March 2017. The highway

patrolman identified the pills as oxycodone (Schedule II) and Busek admitted that the pills were Percocet.  Accordingly, the speedy trial clock for the underlying charges herein arose in March 2017, and Busek's statutory speedy trial rights were violated when she was indicted in January 2018 with drug possession.  Therefore, we find the trial court did not err in dismissing the case on speedy trial grounds.

{¶ 27} The state's sole assignment of error is overruled.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINSTRATIVE JUDGE

LARRY A. JONES, SR., J., and
RAYMOND C. HEADEN, J., CONCUR