[Cite as *State v. Dowen*, 2015-Ohio-302.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101020**

STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

**CHRISTOPHER DOWEN**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-575977-A

**BEFORE:** McCormack, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 29, 2015

**ATTORNEY FOR APPELLANT**

David L. Doughten
David L. Doughten Co. L.P.A.
4403 St. Clair Avenue
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Jeffrey S. Schnatter
Kristin Karkutt
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Christopher Dowen ("Dowen"), appeals his conviction and sentence for tampering with evidence. For the reasons set forth below, we affirm Dowen's conviction and sentence but remand for the limited purpose of incorporating the consecutive sentence findings made at sentencing into the court's entry.

{¶2} In July 2013, Dowen was charged with two counts of murder, two counts of felonious assault, and tampering with evidence. The matter proceeded to a jury trial in December 2013 at which the following evidence was adduced.

{¶3} In early June 2013, Samantha Terriaco ("Terriaco"), Dowen's fiancée and the mother of their two-year-old son, received a text message from the victim and former boyfriend, Prentice Dietrich-Smith ("Dietrich-Smith"). Dietrich-Smith had recently moved back to Cleveland from New York. He wanted to get together with Terriaco and texted her that he loved her. Terriaco discussed these text messages with Dowen.

{¶4} Dowen, Terriaco, and Dietrich-Smith were all Facebook "friends." Dowen and Terriaco observed on Facebook that Dietrich-Smith was in a relationship with Tiffany Erway ("Erway"). They also observed that Dietrich-Smith had posted on Erway's Facebook page "I love you" comments. He had texted similar comments to Terriaco. On June 30, 2013, at approximately 2:30 p.m., Dowen sent a private Facebook message to Erway stating, in part,

> that stuff about * * * you're the only one he loves is crap. I don't want to sound like a weird person doing this but all that's a lie. He said that sh*t to my fiancée two weeks ago. I know because I was reading all her texts because she showed me them. I just wanted to let you know. What you choose to do is up to you.

{¶5} On the same day, Erway and Dietrich-Smith had a conversation about Dowen's message through posts on each other's Facebook pages. Erway posted a poem directed at Dietrich-Smith, and Dietrich-Smith wrote posts lamenting that, "it was over" and "he has too

many regrets." Dowen and Terriaco followed the conversation as it occurred on Facebook. At approximately 3:30 p.m., Dietrich-Smith texted Terriaco asking her where Dowen was. Terriaco did not tell Dietrich-Smith of Dowen's whereabouts. Meanwhile, Dietrich-Smith posted comments about Terriaco on his Facebook page. Dowen posted his own Facebook comments in response to Dietrich-Smith's.

{¶6} Then at approximately 4:10 p.m., Terriaco texted Dietrich-Smith a message stating, "[c]all my number. Chris (Dowen) wants to talk to you." Dowen texted Dietrich-Smith from Terriaco's phone,"[w]hat do you want? It's Chris." Dietrich-Smith replied to the text at approximately 10:20 p.m. He said, "don't worrie, bruh it's cool." Dowen responded, "[n]o it's not. You need to apologize to Sam (Terriaco). She saw what you said about her." Dietrich-Smith responded, "[I don't give a f**k] it's tru[.] imma c u around cuzz... Fuxk u and her." Dowen texted, "[b]e prepared. I'm on my way to your house. Expect a knock on your door." Dietrich-Smith replied, "bett :)" and Dowen replied, "count on it :)" Dietrich-Smith then texted Dowen, "you better come [today]." In response, Dowen texted, "I'm down the road."

{¶7} The latter part of this conversation occurred while Dowen was driving to Wal-Mart with Terriaco and a friend of the Dowen family, Theodore Gerber ("Gerber"). Gerber was staying with Dowen while he was in town for Dowen's high school graduation. Instead of going to Wal-Mart, Dowen drove them to Dietrich-Smith's house. Dowen parked the car in the driveway. Gerber remained in the backseat of the car while Dowen and Terriaco approached the house and knocked on the door. Dietrich-Smith's mother, Miranda Dietrich ("Miranda"), answered the door. She was aware of what was transpiring from speaking with her son earlier. Dowen told Miranda that he wanted Dietrich-Smith to come out and apologize.

{¶8} Miranda told Dowen that her daughter was having a slumber party and it was a bad time for him to come to her house. Dowen insisted that he wanted an apology. Dietrich-Smith then came outside and walked to the driveway. Miranda said, "[i]f there is going to be a physical altercation out here, we're not talking weapons, we're just talking dukes." Miranda then went back inside her house.

{¶9} When Dietrich-Smith received the earlier message from Dowen that he was on his way to his house, Dietrich-Smith called his friend W.H., at approximately 10:00 p.m., and asked him to come over. W.H. was with J.D. and K.E. at J.H.'s house. J.H.'s house was around the corner from Dietrich-Smith's house. The four of them got into W.H.'s car, and W.H. drove them to Dietrich-Smith's house. When they arrived, they observed Dietrich-Smith and Dowen arguing in the front yard. Terriaco was also in the front yard, and Gerber was still in the back of Dowen's car. J.H., J.D., and K.E. proceeded to get out of W.H.'s car, and W.H. pulled his car into the driveway.

{¶10} J.H., J.D., and K.E. all testified that Dietrich-Smith punched Dowen in the face and then ran away. Dowen then fell to the ground, and K.E. punched Dowen in the torso. J.H. kicked Dowen in the shoulder after he observed Dowen reach to his waist and pull out a weapon that had a glare. J.H. believed Dowen had a weapon in his hand. K.E. testified that he observed a knife in Dowen's hand. J.D. testified that during the altercation, he observed Dowen reach into his pocket and pull out a knife. Dowen then stood up with the knife in his hand and chased after Dietrich-Smith. W.H., J.H., J.D., and K.E. then got into W.H.'s car and left the scene.

{¶11} Terriaco testified that Dietrich-Smith punched Dowen, which caused him to fall to the ground. The four friends then jumped on top of Dowen and all five were punching and

kicking him at the same time. She was screaming for them to stop fighting. One of them knocked Terriaco over as she tried to pull them off Dowen. Dietrich-Smith ran away while the friends continued to punch and kick Dowen. Then, the four friends left together. Dowen got up and started "hobbling/running down the street." Terriaco did not observe him catch up with Dietrich-Smith.

{¶12} Gerber testified that he exited Dowen's car after he observed the group of boys on the ground. He yelled, "what the hell is going on here" and W.H., J.D., K.E., and J.H. all jumped up, got back into W.H.'s car, and left the scene. Miranda came outside after she heard Terriaco screaming. At first, she did not see Dietrich-Smith or Dowen. Dowen then walked back toward Terriaco. Miranda asked Dowen and Terriaco who was lying in the street. Terriaco, Dowen, and Miranda walked toward the person lying in the street and determined that it was Dietrich-Smith. Dowen approached Dietrich-Smith first and said that Dietrich-Smith had been stabbed. Terriaco then asked Dowen to check on Gerber while she called 911. She proceeded to dial 911 and then handed the phone to Miranda. When Dowen ran back toward the car, he put something into Gerber's jacket pocket and told him to "hold it for me." Gerber got back into the backseat of the car and waited for the police to arrive. While in the car, he examined the item Dowen gave him and saw that it was a penknife. He then tucked it behind the rear passenger seat cushion of Dowen's car.

{¶13} Meanwhile, Miranda and Terriaco remained with Dietrich-Smith until the police and ambulance arrived. Terriaco testified that Dowen remained with Gerber at the car when the police arrived, and the police remained with the ambulance while Dowen remained with Gerber. Terriaco stated that the police asked her to retrieve Dowen and she did as she was asked. She

further testified that prior to retrieving Dowen from the car, Dowen knew the police were on the scene.

{¶14} Miranda observed a stab wound in Dietrich-Smith's abdomen and, in his pants pocket, the handle of a yellow knife from her kitchen. The blade was pointing down toward his thigh and did not have any blood on it. Miranda went with Dietrich-Smith to the hospital. Dietrich-Smith was pronounced dead at 2:11 a.m.

{¶15} On the scene, Terriaco, Dowen, and Gerber each gave a statement to the police. Gerber did not inform the police about the knife until he was questioned at the police station. Officer David Maslyk of the Euclid Police Department testified that he asked Dowen during his questioning if he had any weapons on him or if he observed any on Dietrich-Smith. Dowen replied he did not have any weapons, nor did he see any on Dietrich-Smith. Dowen informed Officer Maslyk that when he caught up to Dietrich-Smith, he was already lying in the street. Dowen rolled him over and observed a cut in his stomach. Officer Maslyk testified that Dowen told him that he "screamed for someone to call 911." Officer Maslyk asked Dowen if he knew how Dietrich-Smith was stabbed. Dowen replied that he did not know. Upon further questioning, Dowen later told Officer Maslyk that he did, in fact, have a knife with him that night, but he had no idea where it was and he could not describe what it looked like. While on the scene, Dowen never informed the officer that he stabbed Dietrich-Smith, how Dietrich-Smith was stabbed, or where the knife was now located.

{¶16} Detective Daniel Novitski of the Euclid Police Department testified that he interviewed Dowen at the police station. A recording of the interview was played for the jury, during which Dowen denied any knowledge of a knife until he was confronted with the fact that Gerber informed another detective that Dowen placed a knife into Gerber's jacket pocket after

the altercation. Detective Novitski then obtained a search warrant to search Dowen's vehicle. He found the knife in the vehicle after the rear passenger seat cushion was removed from the vehicle. The detective testified that the knife was tucked up behind the cushion as if someone pushed it up there.

{¶17} Trace evidence expert, Daniel Mabel, testified that the fibers found on Dowen's knife were similar to the fibers from Dietrich Smith's shirt. Hristina Lekova of the Cuyahoga County Forensic Lab testified that Dowen could be excluded as a contributor to the DNA found on the blade of Dowen's knife, but Dietrich-Smith could not be excluded as a contributor to the DNA found on the blade of Dowen's knife.

{¶18} At the conclusion of trial, the jury found Dowen not guilty of Count 1 — murder, but guilty of reckless homicide, the lesser included offense of murder. The jury also found him guilty of Count 5 — tampering with evidence. The jury found him not guilty of Count 2 — murder, Count 3 — felonious assault, and Count 4 — felonious assault. On January 23, 2014, the trial court sentenced Dowen to 36 months prison on the lesser included offense under Count 1 — reckless homicide, and 36 months prison on Count 5 — tampering with evidence. The court ordered that the terms be served consecutively, for a total sentence of 6 years in prison.

{¶19} Dowen now appeals, raising the following three assignments of error for review.

I. The evidence is insufficient to sustain a conviction of tampering with evidence in violation of R.C. 2921.12(A).

II. The trial court erred by sentencing the appellant to serve consecutive sentences without submitting adequate reasons in support pursuant to R.C. 2929.14(C).

III. The trial court erred by sentencing the appellant to three years of incarceration for each count without fully considering the issue of proportionality pursuant to R.C. 2929.1[1](B).

{¶20} In his first assignment of error, Dowen challenges the sufficiency of the evidence regarding his conviction for tampering with the evidence. He argues that when he placed the knife into Gerber's pocket, he merely requested that Gerber hold it; he did not instruct Gerber to hide or dispose of it. Dowen claims that this evidence is insufficient to establish that he intended to conceal the knife from police with the purpose to impair its availability. We find this argument unpersuasive.

{¶21}  When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶22} Dowen was convicted of tampering with evidence under R.C. 2921.12(A)(1), which provides:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * *:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

{¶23} In examining R.C. 2921.12(A)(1), the Ohio Supreme Court acknowledged that there are three elements to tampering with evidence: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11. A conviction for tampering with evidence under this statute, therefore, necessarily requires proof that the defendant intended to impair the availability of the evidence that is related to "an existing or likely official investigation or proceeding." *Id.* at ¶ 19. "Likelihood is measured at the time of the act of alleged tampering." *Id.*

{¶24} Tampering with evidence under R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result. *See State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 21 (9th Dist.); R.C. 2901.22(A). When determining whether the defendant acted purposely, a defendant's state of mind may be inferred from the surrounding circumstances. *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786, ¶ 13, citing *Skorvanek* at ¶ 21.

{¶25} Here, Dowen, Miranda, and Terriaco located Dietrich-Smith lying on the ground. The state presented evidence that Dietrich-Smith had been stabbed in the abdomen. Dowen, Miranda, and Terriaco all observed that Dietrich-Smith had been stabbed, and Officer Maslyk testified that Dowen said he screamed for someone to call 911. After locating Dietrich-Smith on the ground, and observing his stab wound, Terriaco asked Dowen to check on Gerber, who was still waiting in the vehicle, while she called 911. After having observed the stab wound in Dietrich-Smith's abdomen, Dowen ran to see Gerber. While at the car, Dowen handed the knife

to Gerber and asked Gerber to "hold it" for him. When the officers arrived on the scene, the police asked Terriaco to retrieve Dowen from the car. Terriaco testified that Dowen remained with Gerber at the car when the police arrived until Terriaco retrieved him and that Dowen knew the police were on the scene while Dowen waited at the car with Gerber.

{¶26} When Dowen returned to the scene, he told the officers, in response to questioning, that he did not have any weapons on him and he did not see any weapons on Dietrich-Smith. Later, during a police interview, Dowen denied any knowledge of a knife, until he learned that Gerber informed the detective that Dowen placed a knife into Gerber's pocket after the altercation.

{¶27} In light of the above, when viewing the evidence in the light most favorable to the state, we find any rational trier of fact could find that Dowen had knowledge of a likely investigation into the stabbing of Dietrich-Smith. Moreover, a rational trier of fact could infer that he concealed or removed his knife by asking Gerber to "hold it" for him, with the purpose of impairing its availability in the investigation. Therefore, the finder of fact could have rationally determined that under the circumstances, by asking Gerber to "hold" the knife for him, Dowen was acting to prevent it from being available as evidence against him. Dowen's conviction for tampering with evidence is therefore supported by sufficient evidence.

{¶28} Dowen's first assignment of error is overruled.

**Consecutive Sentences and Proportionality**

**{¶29}** In his second and third assignments of error, Dowen argues the trial court erred when it ordered him to serve consecutive sentences for reckless homicide and tampering with evidence. Although Dowen acknowledges that the trial court made the statutorily mandated findings for consecutive sentences under R.C. 2929.14(C), it contends that the court did not provide "adequate reasons" in support of its findings. He also argues that the trial court did not adequately consider the issue of proportionality.

**{¶30}** R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶31}** The presumption in Ohio is that sentencing is to run concurrent, unless the trial court makes the R.C. 2929.14(C)(4) findings for consecutive sentences. *State v. Evans*, 8th Dist. Cuyahoga No. 100151, 2014-Ohio-3584, ¶ 25, citing *State v. Wells*, 8th Dist. Cuyahoga No. 98428, 2013-Ohio-1179, ¶ 11; R.C. 2929.41(A).

**{¶32}** Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, "and by doing so it affords notice to the offender and to defense counsel." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. "Findings," for these purposes, means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). A trial court is not, however, required to state its reasons to support its findings, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Id.* at ¶ 37.

**{¶33}** The failure to make consecutive sentence findings is contrary to law. *See State v. Jones*, 93 Ohio St.3d 391, 399, 754 N.E.2d 1252 (2001).

**{¶34}** In January 2014, the trial court sentenced Dowen to 36 months in prison for reckless homicide in Count 1 and 36 months in prison for tampering with evidence in Count 3. The court ordered the sentences to be served consecutively, for an aggregate term of 72 months, or six years, of incarceration.

**{¶35}** At sentencing, and prior to making the consecutive sentence findings, the trial court stated that, after hearing all of the testimony and the evidence, it found that "it's clear from what I heard that you and only you were the cause of the victim not being alive at this time." The court noted how "appalled" it was at Dowen's egregious behavior, stating as follows:

> You were the one who set all this in motion. And listening day after day about posts on Facebook, you interjecting yourself into someone else's relationship and then now someone's dead as a result of that, it's incomprehensible to me. It's appalling. And, quite frankly, reading through your sentencing memorandum that was provided to the Court from your counsel and reading about all of your accolades and everyone writing about you saying what a great person you are, how responsible you are and a great father and fiancé, it's even more appalling to me to

have to sit and listen, as I did, day after day, about how you interjected yourself into someone else's relationship.

And then, for whatever reason, decided to take it upon yourself to get involved in that situation and hurt someone. I have no understanding for what you did, whatsoever. Because of you posting on Facebook, someone's dead. And, it makes no sense to me.

And so, when I read through your sentencing memorandum and all these people saying how great you are, and you saying how great you are, and that you're changing your ways and going to change your ways and this has been a learning experience, it's appalling to me, really.

One, I don't know how you ever thought that you should get involved in someone else's relationship, as I said, but then two, to take it even further, go over to that person's house, I don't know what you were thinking. But, to me, there is no justification for that, whatsoever.

And now there is someone who is dead because of that. This person did nothing to you, nothing, from all the evidence and the testimony that I heard, zero. And so why you decided to pick a fight with him and then go over there and take it to the next level, I have no idea. And, it's just a tragedy, really. All because of this Facebook.

{¶36} The court stated that it reviewed Dowen's presentence investigation report as well as the sentencing memorandum and supplemental sentencing memorandum provided by defense counsel. It further stated that it heard from Dowen, Dowen's family members, the state, and the individuals on behalf of the state.

{¶37} Thereafter, the trial court made the findings mandated by R.C. 2929.14(C), stating that it finds that a consecutive sentence "is necessary to protect the community and punish the offender, * * * it's not disproportionate, [a]nd * * * the harm was so great or unusual, a single term does not adequately reflect the seriousness of your conduct." The court also found that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual,

that no single prison term for any of the offenses committed, as part of the course of conduct, "adequately reflects the seriousness of your conduct."

{¶38} The court reiterated that the harm was so great because "[a] life was lost for no reason whatsoever. * * * You were the one who initiated this situation by inserting yourself into someone else's relationship * * * and then taking it to the next level, going to that person's house, bringing a knife with you and confronting that individual, for no reason." Finally, the court noted the seriousness of Dowen's actions with respect to tampering with evidence, noting that "this was a murder. This was a situation where you then got rid of the knife that you used to stab [the victim]."

{¶39} In light of the foregoing, we find that the trial court satisfied the requirements of R.C. 2929.14(C)(4), and the record supports its findings. Dowen's consecutive sentence is therefore not contrary to law.

{¶40} However, the trial court must incorporate the findings to impose consecutive sentences into its sentencing entry. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 29. The failure to include the findings is a "clerical mistake" and does not render the sentence contrary to law. *Id.* at ¶ 30, citing *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 15. The omission may therefore be corrected through a nunc pro tunc entry "to reflect what actually occurred in open court." *Id.*

{¶41} The trial court's sentencing entry in this case does not include the consecutive sentence findings. Therefore, in accordance with *Bonnell*, we remand to the trial court for the limited purpose of incorporating the consecutive sentence findings made at sentencing into the court's entry.

**{¶42}** Dowen also contends that the trial court erred by sentencing him to three years for each count without fully considering the issue of proportionality. The concept of "proportionality" in felony sentencing arises only in the context of consecutive sentences. *State v. Thompson*, 8th Dist. Cuyahoga No. 99628, 2014-Ohio-202, ¶ 25. As previously stated, in order for the court to impose consecutive sentences, it must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). This finding "relates solely to the offender's conduct and not to the conduct of any others — it does not require the court to compare the offender's conduct to that of others." *Thompson* at ¶ 25. And as this court found, the trial court made the requisite consecutive sentence findings, including that of proportionality.

**{¶43}** Dowen cites to R.C. 2929.11(B) in support of its proportionality argument, which states that the sentence imposed for a felony must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." However, this statute refers to "consistency" in sentencing, not "proportionality." Although the terms are often confused, "consistency" in sentencing is not the same as uniformity. *State v. Lababidi*, 8th Dist. Cuyahoga No. 100242, 2014-Ohio-2267, ¶ 12, citing *State v. Bonness*, 8th Dist. Cuyahoga No. 96557, 2012-Ohio-474, ¶ 27. And consistency is not achieved from a case-by-case comparison, but rather, it is gained through "the trial court's proper application of the statutory sentencing guidelines." *Id.*, citing *State v. Sutton*, 8th Dist. Cuyahoga No. 97132, 2012-Ohio-1054, ¶ 17. Here, the trial court stated in its sentencing entry that it considered all required factors of the law and "finds that prison is consistent with the purpose of R.C. 2929.11."

**{¶44}** In light of the above, Dowen's second and third assignments of error are overruled.

**{¶45}** Judgment affirmed, and case remanded for the limited purpose of incorporating the consecutive sentence findings made at sentencing into the court's entry.

**{¶46}** It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS (WITH SEPARATE OPINION ATTACHED)


MARY EILEEN KILBANE, P.J., DISSENTING:

**{¶47}** I respectfully dissent. I would find insufficient evidence to sustain Dowen's tampering with evidence conviction.

**{¶48}** While Dowen asked Gerber to hold his knife, and he did not initially volunteer to the police that he had a knife, these actions, without more, do not support the tampering with evidence conviction. At the time when Dowen placed the knife in Gerber's pocket (the alleged tampering), there is nothing in the record demonstrating that he actually concealed the knife with the purpose to impair its availability in the likely investigation.

**{¶49}** The record is clear that Dowen did not ask Gerber to hide or dispose of the knife. Gerber, on his own volition, tucked the knife behind the rear passenger seat cushion of Dowen's car. More than missing evidence is required to prove a tampering with evidence charge. *State v. Miller*, 3d Dist. Marion No. 9-13-27, 2014-Ohio-4998, ¶ 28. *See also State v. Williamson*, 2d Dist. Montgomery No. 25479, 2014-Ohio-325 (Fain, J., concurring) ("[I]n my view, the mere fact that the perpetrator of an offense involving a firearm, after the offense has been committed, divests the firearm from his person, putting it in some other place where one might expect the firearm to be kept (in this case, in the trunk of his vehicle), without more, is not sufficient to make out the offense of Tampering with Evidence.")

**{¶50}** Thus, even when viewing this evidence in the light most favorable to the state, I would not find beyond a reasonable doubt that Dowen altered, destroyed, concealed, or removed potential evidence with the purpose of impairing its availability in the investigation.

**{¶51}** Therefore, I would sustain the first assignment of error and overrule the remaining assignments of error, challenging his sentence as moot.