DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Daryl Inman has appealed from his conviction of trafficking in cocaine in the Medina County Court of Common Pleas. This Court affirms.
 I {¶ 2} Appellant was indicted by the Medina County Grand Jury on June 5, 2003, on a single charge of trafficking in cocaine, a violation of R.C. 2925.03(A). He was charged with trafficking in less than five grams of cocaine, a fifth degree felony pursuant to R.C. 2925.03(C)(4)(a). The indictment resulted from events that occurred on March 13, 2003, when a confidential informant for the Medina County Drug Enforcement Task Force ("Task Force") identified Appellant as the individual who supplied cocaine to Willard Meeks ("Meeks"), who in turn sold some of the cocaine to the confidential informant.
 {¶ 3} A three day jury trial began on October 1, 2003. On October 3, 2003, the jury returned a guilty verdict on the single count as charged in the indictment. On October 17, 2003, Appellant was sentenced to one year of incarceration as a result of his conviction.
 {¶ 4} Appellant has timely appealed his conviction, asserting one assignment of error.
 II Assignment of Error Number One
"The evidence at trial concerning the elements of identity and `sell or offer to sell' was insufficient to support appellant's trafficking in cocaine conviction, and that conviction was against the manifest weight of the evidence."
 {¶ 5} In his first assignment of error, Appellant has argued that his conviction was based on insufficient evidence and against the manifest weight of the evidence. Specifically, he has argued that the State failed to establish that he was the actual perpetrator of the crime of trafficking in cocaine, and that he sold or offered to sell cocaine to Meeks. We disagree.
 {¶ 6} As to Appellant's claim that his conviction was based upon insufficient evidence, we note that Appellant brought a Crim.R. 29(A) motion for acquittal at the close of the State's case then renewed his motion at the close of all the evidence. Therefore, Appellant has preserved this issue for appeal. See State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 7.
 {¶ 7} As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, (Cook, J., concurring). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390.
 {¶ 8} On review of the sufficiency of the evidence, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 50, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 9} However, when a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 10} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
 {¶ 11} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted). State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 12} In the instant matter, Appellant was convicted of trafficking in cocaine, a violation of R.C. 2925.03(A)(1), which states that no person shall knowingly "[s]ell or offer to sell a controlled substance[.]" R.C. 2925.03(A)(1). Because he was arrested for trafficking in less than five grams of cocaine, Appellant was charge with a fifth degree felony. R.C. 2925.03(C)(4)(a).
 {¶ 13} Appellant first has argued that the State failed to prove beyond a reasonable doubt that he was the individual who was in Meeks' apartment when the drug transaction with the confidential informant occurred. He has also argued that the State failed to prove beyond a reasonable doubt that he sold or offered to sell cocaine to Meeks. The State has argued that it proved both of these elements of the crime beyond a reasonable.
 {¶ 14} The confidential informant was the State's first witness at trial and testified to the following. He became a confidential informant for the Task Force in 2002 after he was arrested for possession of marijuana. In order to get the charges dismissed, he wore a hidden recording device during a drug transaction that is not relevant to the instant appeal. After the charges were dismissed, the confidential informant decided to continue his relationship with the Task Force because he became tired of drug traffickers dealing drugs in his neighborhood.
 {¶ 15} The confidential informant further testified that Meeks had sold crack cocaine to him in the past and that the two had smoked crack cocaine together in the past. On March 13, 2003, the confidential informant wore a hidden recording device to Meeks' apartment and told Meeks that he wanted to purchase crack cocaine. Meeks borrowed the confidential informant's cell phone and "asked his supplier for a hundred[,]" meaning a hundred dollars worth of crack cocaine. Approximately forty minutes later, Appellant arrived at Meeks' apartment and took Meeks into the kitchen, gave him the cocaine, then left the apartment. Meeks gave half of the cocaine to the confidential informant, at which point the confidential informant protested the fact that Meeks had given him powder cocaine rather than crack cocaine. Mark Schoonover ("Schoonover"), a Task Force officer who had been listening to the entire transaction via the confidential informant's hidden recording device, immediately called the confidential informant on his cell phone and told him to take the powder cocaine and meet Task Force personnel at a pre-determined rendezvous point, which he did. The confidential informant was searched by Task Force personnel immediately prior to entering Meeks' apartment and immediately after he left Meeks apartment in order to ensure that any cocaine in his possession came from the transaction with Meeks.
 {¶ 16} During the confidential informant's testimony, the State played a recording made from his hidden recording device. The confidential informant identified the portion of the recording which recorded the moment Appellant entered the apartment and when Schoonover called him on his cell phone and gave him instructions on how to handle the buy. In open court, the confidential informant identified Appellant as the individual who delivered the powder cocaine to Meeks on March 13, 2003, and who was heard entering the apartment on the audio cassette. On cross examination, the confidential informant admitted that he did not speak to the person who delivered powder cocaine to Meeks, and that he did not actually see Appellant hand powder cocaine to Meeks.
 {¶ 17} Task Force Officers Scott Marcum ("Marcum") and Frederick Wolk ("Wolk") also testified for the State. Marcum testified to the following. Marcum monitored the audio transmission from the confidential informant's hidden recording device and conducted visual surveillance of Meeks' apartment while the confidential information was in the apartment. Marcum heard Meeks and the confidential informant discuss purchasing drugs, at which time Meeks said they would have to wait for someone to bring the drugs to them. Within twenty minutes, Marcum saw a late model car park outside the apartment, but he was unable to see the person who got out of the car. Through the confidential informant's hidden recording device, Marcum then heard the car door slam shut and the door of Meeks' apartment open. Marcum then "hear[d] the transaction taking place." Shortly thereafter, Marcum heard the apartment door shut, saw the taillights of the late model car turn on, and saw the late model car leave the parking lot.
 {¶ 18} Marcum further testified that he contacted a mobile surveillance unit and gave them the description and location of the late model car, at which time the mobile unit began following the late model car. Marcum had some initial confusion as to whether or not he had identified the correct car to the mobile surveillance unit, but soon confirmed that he had in fact identified the correct car.
 {¶ 19} Wolk testified to the following. Wolk was monitoring the audio transmissions from the confidential informant while in Meeks' apartment. Wolk was the mobile surveillance unit that followed the late model car as it left the apartment at the conclusion of the drug transaction between the confidential informant and Meeks. Although he was unable to see who was driving the car, Wolk got a very close look at the car and noticed that it was unique because it was an older model car in excellent condition. While Wolk was following the late model car, Marcum told him that he was not sure he had told Wolk to follow the correct car. At that point, Wolk turned around and headed back to Meeks' apartment. While en route, Marcum told Wolk that Wolk had in fact been following the correct car, so Wolk turned around again and attempted to find the car he had previously been following. Wolk began searching for the late model car at various spots known to be frequented by individuals engaged in drug trafficking. Wolk found the late model car he had originally been following at Paul's Pub. Wolk ran its license plate number through the Law Enforcement Data System, and discovered that the car was registered to Kerina O'Brien ("O'Brien"). Wolk shared the registration information with Schoonover the next day. Schoonover recognized O'Brien as the girlfriend or wife of Appellant.
 {¶ 20} On cross examination, Wolk admitted that he did not know who was driving the car when it left Meeks' apartment and that he had lost track of the car for approximately twenty to thirty minutes after it left Meeks' apartment and before it was found at Paul's Pub.
 {¶ 21} Schoonover testified to the following for the State. Schoonover supervised the relationship between the confidential informant and the Task Force. On March 13, 2003, the confidential informant was working for the Task Force when he went to Meeks' apartment to purchase drugs. Schoonover monitored the audio transmission from the confidential informant's hidden recording device. Schoonover heard Meeks call his "cocaine source" on the confidential informant's cell phone. Twenty minutes or so after Meeks placed the phone call, the source arrived at the apartment. The confidential informant described the source to Schoonover, and the description matched that of Appellant. Because the license plate of the late model car was traced to O'Brien, who was known to be the girlfriend of Appellant, Appellant's photo was placed in a photo line up and shown to the confidential information. The confidential informant immediately identified Appellant as the individual who supplied powder cocaine to Meeks in his apartment on March 13, 2003. On cross examination, Schoonover admitted that he did not see Appellant arrive at Meeks' apartment on March 13, 2003, nor did Schoonover see Appellant driving the late model car that left Meeks' apartment after the drug transaction was completed.
 {¶ 22} Meeks testified for the State. He stated that he never gave the confidential informant any cocaine; that Appellant was not at his apartment on March 13, 2003; and that he did not call Appellant from the confidential informant's cell phone on March 13, 2003 to request any cocaine.
 {¶ 23} O'Brien testified for the State and testified to the following. She owned the car that Wolk claimed he followed as it left Meeks' apartment on the night of March 13, 2003. She and Appellant shared the cell phone that Meeks called on the night of March 13, 2003, during the drug transaction with the confidential informant. The late model car was often lent to other people to drive, and those same people often drove Appellant to Paul's Pub.
 {¶ 24} In addition to the State's witnesses, it admitted four exhibits into evidence which included the audiocassette recording taken by the confidential informant when he purchased cocaine from Meeks; the cocaine itself; a copy of the photo line-up that Task Force officers presented to the confidential informant and from which he identified Appellant as the individual who delivered cocaine to Meeks; and a sworn affidavit from the lab technician who tested the substance confiscated from the confidential informant which confirmed that the substance was cocaine.
 {¶ 25} Appellant did not present any witnesses at trial. His mug shot taken at the time of arrest for the underlying charge and a report from the Ohio License Bureau indicating that O'Brien was the registered owner of the late model car followed by Task Force officers were admitted into evidence.
 {¶ 26} Our review of the record convinces us that the State presented ample evidence that Appellant was in fact the person who sold powder cocaine to Meeks. Even though no one saw the Appellant hand the cocaine to Meeks, this Court has previously held that "[c]ircumstantial evidence from which a jury could infer culpability possesses the same probative value as direct evidence." (Alterations sic.) State v. Wooden (Feb. 11, 1998), 9th Dist. No. 18448, at 7, appeal not allowed (1998),82 Ohio St.3d 1411, citing Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus. Therefore, the jury was entitled to infer, based on the testimony presented by the confidential informant and the Task Force officers, that Appellant sold or offered to sell powder cocaine to Meeks, who in turn sold some of the cocaine to the confidential informant. At the same time, the jury was entitled to disbelieve Meeks' testimony that Appellant was never in his apartment and that Meeks never sold cocaine to the confidential informant. This Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other. See State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 27} Viewing the evidence in a light most favorable to Appellant, this Court concludes that the jury clearly did not lose its way and create a manifest miscarriage of justice when it convicted Appellant of trafficking in cocaine. Moreover, this is not an exceptional case in which the weight of the evidence warrants a reversal. Appellant's sole assignment of error is not well taken.
 III {¶ 28} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Baird, P.J., Batchelder, J., concur.