[Cite as *State v. Peacock*, 2017-Ohio-2592.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 13-16-26

      v.

RENELL R. PEACOCK,                O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 15 CR 0173

Judgment Affirmed

Date of Decision: May 1, 2017

APPEARANCES:

    *Jennifer L. Kahler* for Appellant

    *Stephanie J. Reed* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Renell R. Peacock ("Peacock"), appeals the November 1, 2016 judgment entry of sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from incidents that occurred on November 29, 2014 and May 18, 2015. On November 29, 2014, Peacock, having been approached by an officer from the Fostoria Police Department, led that officer on a foot pursuit across a parking lot and through an alley in Fostoria, Ohio. During the chase, Peacock discarded a small plastic bag from his pocket prior to being taken to the ground by the officer. The officer then wrestled with Peacock because Peacock continued to resist the officer's attempts to control him, but a civilian aided the officer in apprehending Peacock. A second civilian then arrived, found the item Peacock discarded in the alley, and gave that item to another officer at the scene. On May 18, 2015, Peacock was the target of a controlled-buy operation conducted by law enforcement. During that operation, Peacock sold cocaine to a confidential informant ("CI").

{¶3} On August 5, 2015, Peacock was indicted on Count One of possession of heroin, a violation of R.C. 2925.11(A),(C)(6)(a), a felony of the fifth degree, Count Two of tampering with evidence, a violation of R.C. 2921.12(A)(1),(B), a felony of the third degree, Count Three of resisting arrest, a violation of R.C.

2921.33(A),(D), a misdemeanor of the second degree, and Count Four of trafficking in cocaine, a violation of R.C. 2925.03(A)(1),(C)(4)(a), a felony of the fifth degree. (Doc. No. 1). On August 25, 2015, Peacock pled not guilty to the charges in the indictment. (Doc. No. 11).

{¶4} On September 11, 2015, Peacock appeared for a pretrial conference at which the trial court, at Peacock's request, relieved Peacock's previously appointed counsel and appointed new stand-by counsel to assist Peacock because Peacock wished to represent himself. (Doc. No. 26).

{¶5} On November 24, 2015, a bench trial began, during which Peacock requested that the trial court continue the trial and appoint him counsel, which the trial court did. (Nov. 24, 2015 Tr. at 35, 43). The trial court released Peacock's stand-by counsel from his responsibilities and appointed new counsel for Peacock.[1] (Doc. No. 60).

{¶6} The bench trial resumed on September 15, 2016. (Sept. 15, 2016 Tr. at 5). On September 20, 2016, the trial court found Peacock guilty of each count of the indictment. (Sep. 20, 2016 Tr. at 3). The trial court then sentenced Peacock to 9 months in prison as to Count One, 30 months in prison as to Count Two, 60 days in jail as to Count Three, and 9 months in prison as to Count Four, with the time for

---

[1] Peacock did not specifically ask that his stand-by trial counsel be relieved. (Nov. 24, 2015 Tr. at 37-44). However, by the hearing on a motion to continue the trial on August 2, 2016, Peacock's new counsel had appeared, and his previously appointed stand-by counsel was not present. (Aug. 2, 2016 Tr. at 2).

all charges to be served concurrently for a total of 30 months of incarceration. (Oct. 27, 2016 Tr. at 13-14). The trial court filed its judgment entry of sentence on November 1, 2016. (Doc. No. 101).

{¶7} On November 8, 2016, Peacock filed his notice of appeal. (Appeal Doc. No. 1). He raises four assignments of error for our review. For ease of organization, we will address Peacock's first, second, and third assignments of error together, followed by his fourth assignment of error.

### Assignment of Error No. I

**The Trial Court Erred In Finding Appellant Guilty Of Tampering With Evidence Where the State Failed to Introduce Sufficient Evidence To Support The Conviction.**

### Assignment of Error No. III

**The Trial Court Erred In Finding Appellant Guilty Of Resisting Arrest Where The State Failed To Introduce Sufficient Evidence To Support The Conviction.**

### Assignment of Error No. II

**The Trial Court Erred In Finding Appellant Guilty Of Possession Of Heroin When The Conviction Was Against The Manifest Weight Of The Evidence.**

{¶8} In his first assignment of error, Peacock argues that his tampering-with-evidence conviction is based on insufficient evidence. Specifically, he argues that his tampering-with-evidence conviction is based on insufficient evidence because the State failed to demonstrate that Peacock knew that an investigation was in

progress or that one was about or was likely to begin. (Appellant's Brief at 7). Peacock further argues that his tampering-with-evidence conviction is based on insufficient evidence because there was insufficient evidence presented to show that he "altered destroyed, concealed, or removed any record, document, or thing with purpose to impair its value or availability in a pending investigation." (*Id.* at 8); R.C. 2921.12(A)(1). That is, Peacock argues that there is insufficient evidence that he discarded the bag of drugs. (*Id.*). He argues that, on a windy day such as the one in question, any item of trash could have been blowing by, and he argues that the officer could simply have been mistaken about what he saw because his vision had blurred. (*Id.*).

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the

credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

**{¶11}** R.C. 2921.12 sets forth the elements of the offense of tampering with evidence and provides, in relevant part: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *." R.C. 2921.12(A)(1).

**{¶12}** "Knowledge that a criminal investigation is under way or is imminent is based upon a reasonable person standard." *State v. Hicks*, 3d Dist. Union Nos. 14-07-26 and 14-07-31, 2008-Ohio-3600, ¶ 54, citing *State v. Mann*, 12th Dist. Clermont No. CA2006-05-035, 2007-Ohio-1555, ¶ 11. In order to tamper with evidence within the meaning of the statute, one must intend to impair the value or availability of evidence that is related to an existing or likely investigation, with the likelihood of the investigation measured at the time of the act of alleged tampering. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19.

**{¶13}** R.C. 2921.12(A)(1) employs a "purposely" culpability standard. *See State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, ¶ 21 (9th Dist.), citing *State v. Jones*, 9th Dist. Summit No. 23234, 2006-Ohio-6963, ¶ 13-15. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage

in conduct of that nature." R.C. 2901.22(A). *See Skorvanek* at ¶ 21. A defendant's state of mind may be inferred from the totality of the surrounding circumstances when determining whether the defendant acted purposely. *Skorvanek* at ¶ 21, citing *State v. Patel*, 9th Dist. Summit No. 24030, 2008-Ohio-4693, ¶ 34.

**{¶14}** Therefore, the key inquiries in this case are whether the evidence, when viewed in the light most favorable to the prosecution, is such that any rational trier of fact could have found that (1) a reasonable person in Peacock's position would have known that an official investigation was in progress or was about to be or likely to be instituted, and (2) Peacock removed a bag of drugs from his person with the intention of impairing its availability as evidence in the investigation. As such, we will address whether a reasonable person in Peacock's position would have known an official investigation was in progress or was about or likely to be instituted first, and whether he concealed or removed a bag of drugs from his person with intention of impairing their availability in the investigation second.

**{¶15}** At trial, Fostoria Police Officer Nate Elliot ("Officer Elliot") testified that, on November 29, 2014, at approximately 4:22 p.m., he drove past Fort Ball Pizza on West Center Street, having previously become aware that Peacock was staying at an apartment in the area. (Nov. 24, 2015 Tr. at 22). Officer Elliot averred that, at that location, he observed a vehicle registered to Aubrey Jones, a man whose license was suspended and whose description matched that of the man who was

operating that vehicle at that time. (*Id.* at 22-24). Officer Elliot then testified that, after driving about and receiving information about the vehicle and the person to whom it was registered, he then returned to the spot where the vehicle was parked and saw that its driver exited the vehicle and was walking northbound through a parking lot. (*Id.* at 23-24). Officer Elliot parked his patrol car, exited his vehicle, and yelled to the driver of the other vehicle, asking whether that driver would come and speak with him. (*Id.* at 24). Officer Elliot discerned that the driver of said vehicle was not Aubrey Jones, but rather Peacock, whom he knew from prior encounters. (*Id.* at 24-25).

{¶16} Officer Elliot testified that Peacock falsely identified himself as Kewan Hayes. (*Id.* at 26-27). Officer Elliot testified that he then grabbed Peacock by the arm and indicated that he knew Peacock was not Kewan Hayes, at which point Peacock put his right hand in his coat pocket and fled on foot. (*Id.* at 27). Officer Elliot testified that a chase then ensued. (*Id.* at 27). He testified that, during that pursuit and while he was approximately five or six feet behind Peacock and running through an alley, he observed Peacock remove his right hand from his pocket and discard an item. (*Id.*). That item appeared to be a clear plastic bag with lottery papers inside. (*Id.* at 28). Officer Elliot testified that he saw where Peacock threw the item. (*Id.*).

{¶17} Officer Elliot next testified that Jeremiah McDonald ("McDonald"), a civilian who arrived on the scene, located the item that Peacock discarded. (*Id.* at 29). He said that he saw McDonald pick up the item from the spot to which Peacock discarded it, that he followed McDonald as McDonald walked through the alley and around a building, and that he saw McDonald hand the item to Officer Chad Marchetto ("Marchetto") of the Fostoria Police Department, who by then had arrived on the scene. (*Id.* at 32).

{¶18} On cross examination, Officer Elliot testified that he worked approximately ten hours on the day in question by the time he encountered Peacock. (Nov. 24, 2015 Tr. at 8). He further admitted that he has a medical condition that fatigues him quickly if his heart rate increases and also blurs his vision. (*Id.* at 23). Officer Elliot conceded that a great deal of drug activity takes place in the alley through which Peacock ran. (*Id.* at 30). Officer Elliot asserted that, at the time he saw Peacock discard the bag of drugs in the alley, he was four or five yards behind Peacock. (*Id.* at 32).[2] Officer Elliot went on to explain that, once the chase was concluded and Jeremiah McDonald arrived and searched the alley, Officer Elliot yelled to McDonald from some distance away to stop McDonald from picking up any potential evidence. (Sept. 15, 2016 Tr. at 35). Despite this, Officer Elliot said McDonald picked up a bag of drugs and gave it to Officer Marchetto. (*See id.* at

---

[2] Officer Elliot's earlier testimony indicated that he was "five or six feet" from Peacock when the item was thrown. (Nov. 24, 2015 Tr. at 27).

35-36). Officer Elliot admitted to losing sight of McDonald "briefly" as McDonald walked around a building after picking up the bag of drugs. (*Id.* at 36).

**{¶19}** This case presents a set of facts strikingly similar to those we addressed in *State v. Rock*. *State v. Rock*, 3rd Dist. Seneca No. 13-13-38, 2014-Ohio-1786. In *Rock*, a police officer approached three individuals while operating his cruiser at approximately 2:45 a.m. *Id.* at ¶ 15. As he did so, the officer observed one of the three individuals toss something from his pocket to the ground. *Id.* at ¶ 15. After some questioning, Rock admitted to the officer that one of his companions passed the drugs to him as the officer approached, and Rock discarded the drugs under the belief that they were Vicodin. *Id.* at ¶ 17. When addressing whether the evidence in *Rock* was sufficient to show that a reasonable person in the defendant's position would have known an investigation was about or was likely to be instituted, we held that "passing illegal drugs in front of others in public would put a reasonable person on notice that this illegal activity would be reported to law enforcement and an investigation instituted." *Id.* at ¶ 19. We further held that "a reasonable person in Rock's position would not have felt the need to toss the pills aside * * * if that person did not believe an investigation was about or was likely to be instituted." *Id.* at ¶ 20.

**{¶20}** Here, Peacock did as Rock did—passed illegal drugs in view of the public by removing the drugs from his person in the hope that the approaching

officer would not find them. He would have had no reason to do so if he did not believe that an investigation concerning those drugs was in progress or was likely to be instituted. This case presents an even more favorable set of facts for the State because Peacock discarded the bag of drugs during the light of the day with Officer Elliot running a few feet behind him rather than in the darkness of the morning as an officer approached him from some distance in a cruiser, making it all the more likely that his action would be seen and would result in an investigation.

{¶21} Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable person in Peacock's position would have known that an official investigation was in progress or was about to be or likely to be instituted at the time he discarded the item in question.

{¶22} Second, we will address whether the State presented sufficient evidence to demonstrate that Peacock concealed or removed any record, document, or thing to impair its value or availability in such proceeding or investigation. We conclude that a rational trier of fact could have found that Peacock removed the drugs from his person and concealed them by throwing them with the intention of impairing their availability as evidence in an investigation. Officer Elliot saw Peacock throw an item from his pocket during the chase, saw where the item landed, and later was able to determine that said item was a bag of drugs.

{¶23} Discarding a bag of drugs from one's person during a chase is precisely the sort of conduct the tampering statute contemplates, and the fact-finder could reasonably infer that Peacock did so in order to prevent the item from being used by placing it out of sight or otherwise getting rid of it. *See State v. Colquitt*, 2d Dist. Clark No. 98-CA-71, 1999 WL 812313, *5 (Sept. 24, 1999) (concluding that testimony about the defendant's throwing a bag of drugs over a fence as officers approached was sufficient to establish concealment or removal of the evidence in order to impair its availability in an investigation). The mere fact that Peacock did what he did on a windy day on which various things could have been blowing about while being chased by an officer in imperfect physical condition does not alter our sufficiency analysis. The officer said what he said, and the finder of fact believed him.

{¶24} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found it proven beyond a reasonable doubt that a reasonable person in Peacock's position knew that an official investigation was about or likely to be instituted and that Peacock removed or concealed a bag of drugs with the specific intention of impairing its availability as evidence in the investigation.

{¶25} For the foregoing reasons, Peacock's first assignment of error is overruled.

{¶26} In his third assignment of error, Peacock argues that his resisting-arrest conviction is based on insufficient evidence. Specifically, he argues that, though Officer Elliot pursued and attempted to restrain Peacock, Officer Elliot never told Peacock that he was under arrest, and there was no evidence to suggest that Officer Elliot believed that Peacock was involved in any illegal activity. (Appellant's Brief at 11). Though Peacock does not quite make his argument in these terms, it appears from his brief that Peacock asserts that he did not act recklessly with respect to resisting arrest because he had no reason to believe that Officer Elliot was attempting to arrest him. (*See id.*).

{¶27} R.C. 2921.33 sets forth the elements of the offense of resisting arrest, and it provides, in relevant part, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." R.C. 2921.33(A). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶28} At trial, Officer Elliot testified that he told Peacock to stop during the pursuit and that, when Officer Elliot eventually detained Peacock, Peacock did not comply with his efforts to restrain him. (Nov. 24, 2015 Tr. at 29). According to Officer Elliot, he had to wrestle with Peacock on the ground until a civilian—

Stephen Schalk ("Schalk")—arrived and helped place Peacock in restraints. (*Id.*; *Id* at 32).

{¶29} Schalk also testified on the State's behalf. (Sept. 15, 2016 Tr. at 79). He testified that, on November 29, 2014, he observed Officer Elliot interacting with Peacock in a parking lot on the corner of Wood Street and Tiffin Street. (*Id.*). According to Schalk, he saw the police officer reach for Peacock, at which point both took off running. (*Id.*). Schalk said that the two men than ran through an alley and, the next time Schalk saw them, they were on the ground as Officer Elliot struggled to control Peacock; Schalk approached and helped Officer Elliot place Peacock in restraints. (*Id.* at 80).

{¶30} This case presents facts similar to those in *State v. Dice*, 3rd Dist. Marion No. 9-04-41, 2005-Ohio-2505. In that case, Dice was the object of a police investigation because he allegedly threatened his wife with a firearm. *Id.* at ¶ 5. When the officers located Dice, he fled despite their instructions to stop, and they pursued him. *Id.* at ¶ 8. One of the officers eventually tackled Dice, despite which Dice continued to struggle so much that the officer could not complete the arrest without help from another officer who assisted in subduing Dice. *Id.* at ¶ 27. When Dice came before this Court arguing that there was insufficient evidence of resisting arrest at trial, we concluded that, based on the facts above, sufficient evidence existed to convict Dice of resisting arrest. *Id.*

{¶31} Here, as in *Dice*, Officer Elliot was led on a chase prior to apprehending Peacock. In each case, law enforcement told the defendant to stop to no avail; and, in each case, the defendant was eventually captured, which coincidentally required two people each time.

{¶32} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found proven beyond a reasonable doubt that Peacock recklessly or forcefully resisted or interfered with a lawful arrest. Therefore, Peacock's resisting arrest conviction is based on sufficient evidence.

{¶33} For the foregoing reasons, Peacock's third assignment of error is overruled.

{¶34} In his second assignment of error, Peacock argues that his conviction for possession of heroin is against the manifest weight of the evidence. Specifically, he argues that his conviction for possession of heroin is against the manifest weight of the evidence because, though Officer Elliot believes he saw Peacock discard an item while running through the alley, the officer was also suffering from a health condition that impaired his vision. (Appellant's Brief at 10). Further, he argues that his possession-of-heroin conviction is against the manifest weight of the evidence because the alley in which the bag of heroin was found is one known for extensive drug activity, meaning that there could very easily have been drugs in the alley before Peacock came on the scene. (*Id.*). Peacock further argues that his conviction

is against the manifest weight of the evidence because Schalk searched the alley at Officer Elliot's request and found nothing, while McDonald produced a bag of drugs after ignoring the officer's instructions to guard the alley, walking around the building, and disappearing from sight. (*Id.*). Peacock also notes that, upon his capture, he had no drugs or weapons on his person. (*Id.*).

{¶35} The offense of possession of heroin is set forth in R.C. 2925.11, which provides, in relevant part:

{¶36} "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog. * * * If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin." R.C. 2925.11(A),(C)(6). "Possession" means having control over a thing or substance, though it may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found. R.C. 2925.01(K).

{¶37} Many of the facts weighing in favor of Peacock's possession-of-heroin conviction are summarized above in our discussion of his first assignment of error. We find it unnecessary to review them in their entirety. We will simply note that Officer Elliot testified that, while pursuing Peacock from a distance of five to six feet behind him, he saw Peacock discard an item from his pocket, suspected the item

-17-

might be contraband, and saw the location where the item landed. Officer Elliot then averred that he saw civilian Jeremiah McDonald pick up the item from the spot to which Peacock had thrown it and deliver that item to Officer Marchetto. That item was tested and was found to contain heroin.

{¶38} McDonald testified on the State's behalf. (Sept. 15, 2016 Tr. at 85). McDonald was handed State's Exhibit 2 and identified that item as the item he saw discarded on the day in question and as the item that he picked up before handing it to another officer. (*Id.* 87-88). That item was previously identified as the bag containing heroin. (Nov. 24, 2015 Tr. at 34-36; State's Ex. 3.). McDonald testified that the officer on the scene had told him Peacock discarded something in the alley and that McDonald should go look for it. (*Id.* at 96). McDonald then said he went to the alley and picked up a bag that appeared to him to contain bubble gum. (*Id.* at 96-97). McDonald also said that he did not hear Officer Elliot call out to him as he walked down the alley. (*Id.* at 98). He testified that he gave the bag containing the drugs to the first officer he saw. (*Id.* at 100).

{¶39} Kelsey Degen ("Degen"), a forensic scientist with the Bureau of Criminal Investigation ("BCI"), testified on behalf of the State. (Sept. 15, 2016 Tr. at 116). She conducted an analysis on State's Exhibit 2. (*Id.* at 123). According to her findings, that exhibit contained heroin. (*Id.;* State's Ex. 3).

**{¶40}** As Peacock notes in his brief, Schalk's testimony at trial indicates that he did not see narcotics on Peacock or in the alley despite the fact that he searched the alley for the item Peacock discarded. (*Id.* at 81-82).

**{¶41}** Weighing the evidence above, we conclude that the fact-finder did not clearly lose its way in convicting Peacock of the offense of possession of heroin. Officer Elliot saw Peacock discard a bag during the chase. McDonald retrieved a bag from the alley, which Officer Elliot identified as the same bag he saw Peacock throw, and that bag contained heroin. Mr. Peacock's argument amounts to an assertion that the fact-finder should not have believed the state's witnesses because Peacock's version is more credible under the circumstances, but the mere fact that the officer's eyesight was less than perfect or that the heroin may have belonged to someone else does not weigh heavily against Peacock's conviction. *State v. McCary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 16 (noting that a conviction is not against the manifest weight of the evidence simply because the fact-finder chose to believe one version of events over another). Nor does the fact that McDonald did not follow Officer Elliot's instructions to the letter in handling the contraband he found; regardless of the route he took to give the evidence to the police, McDonald testified that he picked up the item he saw Peacock discard, and McDonald testified that he then gave that item to law enforcement. (Sept. 15, 2016 Tr. at 87-88). The fact-finder was permitted to believe McDonald. *State v. Green*,

10th Dist. Franklin No. 11AP-526, 2012-Ohio-950, ¶ 11. Therefore, Peacock's possession-of-heroin conviction is not against the manifest weight of the evidence.

{¶42} For the foregoing reasons, Peacock's second assignment of error is overruled.

### Assignment of Error No. IV

**Appellant Was Not Provided Effective Assistance Of Counsel When Appellant's Attorney Failed To Provide A Warning To Appellant Prior to Making A Statement And To Advise Appellant Regarding His Fifth Amendment Right to Remain Silent Prior To The Attorney's Release As Counsel of Record For Appellant.**

{¶43} In his fourth assignment of error, Peacock argues that he was denied the effective assistance of counsel at trial. Specifically, he argues that his trial counsel was ineffective because his trial counsel provided no warnings to Peacock about his right to remain silent or that the statements he made at the pretrial conference could be used against him at trial. (Appellant's Brief at 13).

{¶44} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Bradley*, 42 Ohio St.3d 136, 142, quoting

*Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*

{¶45} We conclude that Peacock failed to demonstrate that prejudice resulted from his trial counsel's alleged failures. In light of our dispositions of Peacock's other three assignments of error, which pertained to Counts One, Two, and Three, Peacock has not demonstrated a reasonable likelihood that the results as to those counts would have been different. We thus conclude that Peacock has not demonstrated prejudice and that his trial counsel was not ineffective as to those counts. *State v. Six*, No. 98CA9, 1999 WL 339233 (May 28, 1999) (concluding that a trial counsel's allowing certain statements into evidence did not demonstrate prejudice where "a significant amount" of other evidence had been introduced to prove the defendant's guilt).

{¶46} We will now address whether Peacock has demonstrated a reasonable likelihood that the outcome as to Count Four would have been different but for his admission.

{¶47} At trial, Detective Gabriel Wedge of the Seneca County Drug Task Force ("Detective Wedge") testified that he was involved in a controlled-buy operation that took place May 18, 2015. (Sept. 15, 2016 Tr. at 140). He said that, prior to the operation, a CI contacted him and indicated that he intended to carry out a drug transaction with someone identified as "Freak P." (*Id.* at 143). "Freak P" is

an alias that Peacock uses. (*Id.* at 139). According to Detective Wedge, he searched the CI prior to the controlled-buy operation and found that the CI had no contraband on his person. (*Id.*). The CI was then outfitted with audio-visual equipment and provided money to purchase drugs. (*Id.*). Detective Wedge testified that he saw Peacock meet with the CI in an alley and that, after that meeting, the CI told Detective Wedge that Peacock accepted the money and went to procure drugs. (*Id.* at 145). Next, Detective Wedge testified that he observed Peacock return to the area and enter the CI's home. (*Id.* at 146). Detective Wedge then identified State's Exhibit 6 as the audio-visual record of the transaction, which was subsequently played for the trial court. (*Id.* at 152); (State's Ex. 6).

{¶48} Detective Charles Boyer ("Detective Boyer") of the Tiffin Police Department testified that, at the conclusion of the operation, he picked up the CI, and the CI provided to him a rock-like substance that Detective Boyer suspected was cocaine, which Detective Boyer then provided to Detective Wedge. (Sept. 15, 2016 Tr. at 210). Detective Boyer identified State's Exhibit 4 as the substance he provided to Detective Wedge. (*Id.* at 210-211).

{¶49} Larry Rentz ("Rentz"), a forensic scientist with BCI, testified that he analyzed State's Exhibit 4. (*Id.* at 188). He further identified State's Exhibit 5 as the report indicating that State's Exhibit 4 contained cocaine. (*Id.* at 189); (State's Ex. 5).

**{¶50}** Based on our review of the record, we conclude that Peacock did not demonstrate prejudice, and his counsel was not ineffective. Even in the absence of Peacock's admissions during the pretrial proceeding, we find it highly unlikely that the result as to Count Four would have been different in the absence of what Peacock alleges were his trial counsel's errors. *State v. Inman*, 9th Dist. Medina No. 03CA0122-M, 2004-Ohio-3424, ¶¶ 26-27 (concluding that a charge of trafficking in cocaine was supported by sufficient evidence and was not against the manifest weight of the evidence where authorities used a CI and a recording device, as well as visual surveillance by officers to identify the defendant as a drug trafficker). Because we conclude that Peacock's trial counsel's not advising him to remain silent or that his statements could be used against him does not satisfy the second element of the *Strickland* analysis, it is unnecessary for us to address whether the first element of *Strickland* is met. *State v. Anaya*, 191 Ohio App.3d 602, 2010-Ohio-6045, ¶ 25 (6th Dist.). Therefore, Peacock's trial counsel was not ineffective.

**{¶51}** For the foregoing reasons, Peacock's fourth assignment of error is overruled.

**{¶52}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**
**/jlr**